Ambridge Borough School District's Board of School Directors *v.* Snyder, Appellant.

Argued October 5, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Edward J. I. Gannon,* of *Hazlett, Gannon & Walter* and *J. Wilmer Martin,* for appellant.

*Eugene A. Caputo,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, November 23, 1942:

This appeal is from an order of the common pleas sustaining the dismissal of appellant, Kathryn F. Snyder, from her position as a teacher in the public schools.

On May 8, 1939, the board of school directors of Ambridge Borough School District granted a one year sabbatical leave of absence to Kathryn F. Snyder, effective beginning September 5, 1939, upon her written application stating that the leave was "for the purpose of health."[1] During the period of her sabbatical leave, on December 30, 1939, Mrs. Snyder gave birth to a child. She did not notify the board of her pregnancy or of the birth of the child, and she did not comply with the board's "Regulations Governing Leaves of Absence on Account of Maternity", adopted February 13, 1939.[2] Sometime dur-

---

[1] The School Code of 1911, P. L. 309, section 1216(a), added 1937, July 1, P. L. 2579, as amended 1939, May 25, P. L. 216, provides:

"Whenever any person employed in the public school system of this Commonwealth shall have completed ten years of satisfactory service as a teacher, at least five consecutive years or less at the discretion of the board of school directors of which service shall have been in the school district from which leave of absence is sought . . . . , such person shall be entitled to a leave of absence for restoration of health, study or travel . . . for a half or full school year, at the option of such person.

[2] Section 1 of the Regulations provides:

"In all cases of expected maternity the professional employe shall file with the Superintendent of Schools an application for leave of absence. This application should be made as soon as pregnancy is

ing the school year 1939-40, the board learned, through other channels, of the birth of the child, and on July 16, 1940, notified Mrs. Snyder of its willingness to convert her sabbatical leave into maternity leave, upon being requested to do so prior to the next meeting of the board on August 19, 1940. In the letter of notification it was stated as follows: "The action of the board was taken to permit you to conform to the rules of the Board by requesting the type of leave that should have been requested under the conditions existing at the time the original request was made." Under the "Maternity Regulations" the leave of absence is for a minimum period of two years, except in cases where the child dies, and teachers applying for such leave are not entitled to salary or salary increments during the two years missed[3]; whereas leaves under the Sabbatical Leave Act of 1937 are for a maximum period of one year, the teacher continues to receive his or her regular salary, less the amount paid to a temporary substitute, and the right to salary increments is expressly reserved.[4] Mrs. Snyder made no reply to this

---

determined, and in any event not less than five months prior to the birth of the child . . . Failure to comply with this regulation shall be construed as an act of insubordination upon the part of the employe, and will be treated as such."

[3] Sections 2 and 3 of the Regulations provide as follows:

"2. Such leave of absence when granted shall be for a minimum period of two years from the date of application for leave of absence."

"3. Teachers applying for and securing leaves of absence under the provisions of this rule shall not receive salary from the effective date of said leave until their return to active teaching in the school system. Teachers returning from a leave of absence under these regulations shall receive no increments in salary for the two years missed, but shall be paid the salary to which they were entitled at the time of the granting of the leave."

[4] Section 1216 of the School Code, subsections (d) and (j) provide:

"(d) The person on leave of absence shall receive the difference between his or her regular salary and the salary paid to any substitute employe temporarily engaged because of such leave . . . "

"(j) Every employe, while on sabbatical leave of absence, shall be considered to be in regular full-time daily attendance in the position from which the sabbatical leave was taken, during the period of said leave, for the purpose of determining the employe's length of service and the right to receive increments, as provided by law."

notification of the board, nor did she apply for maternity leave prior to the meeting of August 19, 1940, whereupon the board revoked her sabbatical leave and granted her maternity leave as of May 19, 1939, for a period of two years commencing September 5, 1939. At the same meeting, the board adopted a resolution to "proceed with the dismissal of Mrs. Kathryn Snyder, on account of violation of the school laws and regulations."

The board, on August 22, 1940, notified Mrs. Snyder of a charge of wilful and persistent violation of the school laws, based upon the above facts, and notified her of a hearing to be held thereon on September 3, 1940. Mrs. Snyder did not attend this hearing, either in person or by counsel, and the board, without offering any evidence to substantiate the charges, adopted a resolution dismissing her for failure to appear at the time fixed. An appeal taken by Mrs. Snyder to the Superintendent of Public Instruction was sustained, on the ground that "a mere failure to appear at a hearing is not a ground for dismissal" under the statute, and an order was made directing that another hearing be held if the board desired to proceed with the charges. On February 24, 1941, the charges were renewed and a hearing was held, pursuant to notice, at which Mrs. Snyder appeared by counsel. After hearing, the board concluded the charge of wilful and persistent violation of the school laws had been sustained and adopted a resolution that Mrs. Snyder be dismissed on this ground. From that action Mrs. Snyder again appealed to the Superintendent of Public Instruction, with the result that the board was sustained, and she then took an appeal to the court below. By stipulation, the evidence taken before the board was made part of the record "as though the same had been taken before the court at the hearing de novo." The court below sustained the action of the board and Superintendent of Public Instruction and entered an order dismissing the appeal. The present appeal followed.

Since the hearing in the court below was de novo, appellant's objections to the procedure before the board were not involved, and they are not now subject to re-

view by us on appeal. As stated in *Swick v. Tarentum Boro. School Dist.*, 141 Pa. Superior Ct. 246, 248 (allocatur refused, 141 Pa. Superior Ct. xxxiii) : "It is the rule that when a hearing is de novo before the court objections to the procedure before the board cannot be raised." To this same effect see *Horosko v. Mt. Pleasant Twp. Sch. Dist.*, 335 Pa. 369, 370; *Lane's Appeal*, 141 Pa. Superior Ct. 259, 263. Moreover, it does not appear that appellant's rights have been prejudiced to any extent by the acts of which she complains. She was given an opportunity to appear before the board, and did so appear by counsel at the second hearing; twice she appeared before the Superintendent of Public Instruction; and the whole matter was again gone over by the court below. We are not convinced that any of the alleged irregularities prevented a "full, impartial and unbiased" consideration of the charges against appellant, at any stage of the proceedings, which is all the procedural requirements of the act were designed to secure. "It is true that the Teachers' Tenure Act of 1937 places emphatic limitations on the removal of professional employees of school districts, but it is not to be construed so as to constitute merely an obstruction to the consideration of charges and the removal of professional employees for proper cause. The act discloses no such legislative intent" : *Swick v. Tarentum Boro. School Dist.*, supra, 254.

Was appellant dismissed for proper cause? We agree with the board of school directors, the Superintendent of Public Instruction and the court below that she was. The boards of school directors of the several school districts of the Commonwealth are expressly empowered to adopt and enforce such reasonable rules and regulations governing the management of their affairs and the conduct of teachers or other employees as they may deem proper : School Code of 1911, section 404; *Jones v. Kulpmont Boro. School Dist.*, 333 Pa. 581, 583; *Walker v. Scranton Sch. Dist.*, 338 Pa. 104, 108. Appellant does not deny that she was fully aware of the "Maternity Regulations" adopted by the Ambridge Borough School District pur-

suant to these powers, nor does she question the reasonableness of the regulations, but contends her failure to comply therewith was justified because at the time of her pregnancy she was already "on leave and entirely divorced from the school activities." With this contention we cannot agree. The Sabbatical Leave Act (Act of 1937, P. L. 2579, as amended) provides, in subsection (k), that: "A member of the teaching or supervisory staff, while on sabbatical leave of absence, shall, *for all purposes,* be viewed in law as a full-time teacher, supervisor, principal or other full-time member of the teaching and supervisory staff, as the case may be . . ." Thus, appellant was just as much a professional employee of the school district while enjoying sabbatical leave as if in full-time daily attendance upon her regular teaching duties, and the maternity regulations apply to all such married female employees. Assuming, as appellant contends, that she had no knowledge of her pregnancy at the time she applied for sabbatical leave, or even at the time it was granted, nevertheless, it was her plain duty to notify the board of her changed status and apply for maternity leave in accordance with the regulations. This, however, she obstinately refused to do. Such conduct on the part of appellant amounted to "persistent and wilful violation of the school laws", within the meaning of section 1205 (a) of the School Code, and in our opinion affords ample justification for termination of her employment. As stated in *Ganaposki's Appeal,* 332 Pa. 550, 555: "Disobedience of reasonable orders of the Board of Education is an act of negligence . . . Such conduct may also be classed as 'persistent and wilful violation of the school laws.' " See also *Jones v. Kulpmont Boro. School Dist.,* supra; *Swick v. Tarentum Boro. School Dist.,* 344 Pa. 197.

Order affirmed at appellant's cost.

Dissenting Opinion by Mr. Justice Maxey, November 23, 1942:

I dissent from the majority opinion. I find in this record no proof that the appellant "persistently and wil-

fully violated the school laws". On April 17, 1939, this school teacher applied for "a sabbatical leave of absence for the purpose of restoration of health" and this was granted by the board on May 19th and was for one year from September 5, 1939. This teacher was under the School Code of 1911 as amended, "entitled to this leave, for a half or full year, at her option, inasmuch as she had completed ten years of satisfactory service as a teacher", etc. (see footnote No. 1 in majority opinion). When a teacher is on sabbatical leave she is entitled to receive the difference between her regular salary and the salary paid to a substitute and at the end of the leave she is entitled to be returned to the same position she (or he) occupied before such leave of absence. This sabbatical leave is a matter of statutory right. A School Board has a right to make rules as to maternity leave. This Ambridge school board provided by rules that a married professional employee "in all cases of expected maternity shall file with the Superintendent of Schools an application for leave of absence . . . as soon as pregnancy is determined and in any event not less than five months prior to the birth of the child." "Failure to comply with this regulation shall be construed as an act of insubordination upon the part of the employee, and will be treated as such. Such leave of absence shall be for a minimum period of two years from the date of application. Teachers . . . securing leave of absence under the provisions of this rule shall not receive salary from the effective date of said leave until their return to active teaching in the school system." There are also other provisions in these rules which need not be quoted here. Mrs. Snyder gave birth prematurely to a "seven months baby" on December 30, 1939, eight months and thirteen days after she applied for sabbatical leave and more than seven months after she was granted it. The attending physician's testimony was that this mother became pregnant about one hundred and ninety-six days before her child was born or approximately in the middle of June, 1939. The question therefore resolves itself into this:

Is a female teacher who was advised by her physician (as was the case here) to take a sabbatical leave and who being entitled to such a leave secures it and who a little later becomes pregnant, guilty of "persistently and wilfully violating the school laws" because she did not apply for a leave of absence "on account of maternity". I can find no legal basis for an affirmative answer to that question.

The purpose of the rule requiring a female teacher to apply for a maternity leave is obvious. The interest of the teacher and the interest of the pupils require that a pregnant teacher withdraw from the class-room some months before the expected child is born and remain out for a considerable period after that event. If this teacher had *not* obtained a sabbatical leave and had also failed to apply for a maternity leave at least five months before her baby was born she would have breached the applicable regulations of the School Board. The latter had a right to be informed if one of its teachers who had given no notice of her intention to retire from active service was pregnant, so that it could take steps to release this teacher from her duties for a fixed period and to provide a substitute for her. I can conceive of no reason why the board could demand "an application for leave of absence on account of expected maternity" from a teacher who had already obtained a year's leave of absence for reasons in no way connected with expected maternity. Under the board's interpretation of its rule, if Mrs. Snyder had while on sabbatical leave become pregnant, it would have been her duty to notify the school board of that fact and ask for maternity leave though she may have been at that time in a far distant part of the world. I think that such an interpretation of the rule makes it *un*reasonable, and under Section 404 of the School Code a school board has the power to make *only reasonable* rules and regulations regarding the conduct of teachers, etc.

The following maxim has been long imbedded in the law: "Cessante ratione cessat et ipse lex." "Co. Litt.

70b—Reason is the soul of the law, and when the reason of any particular law ceases, so does the law itself": Broom's Legal Maxims, 7th English Ed. (1900), p. 126 (citing cases). What public purpose would have been served by this teacher informing the school board of a matter so personal to herself as expected motherhood when she had already been granted a year's leave of absence for a lawful reason? If she had attempted to return to her teaching at the end of her sabbatical leave and had *then* concealed the birth of her child, she would have violated the "Regulation" involved, but no such charge was or could be made against her. I find no basis for holding that this Commonwealth requires that a teacher who has been granted sabbatical leave must divulge to a group of school directors such a strictly personal matter as approaching motherhood. What a teacher does while entirely divorced from her school duties is of no concern to the school board so long as it is not prejudicial to her standing and efficiency as a teacher when she is qualified to return to active service. I can discover no rule or reason why Mrs. Snyder had to surrender her earned sabbatical leave of absence and lose her rights to a certain salary under it (i. e., the difference between her regular salary and the amount paid her substitute), merely because after obtaining the leave she became pregnant and while on such leave she gave birth to a child.

The School Code (sec. 1211, subsection j, 24 P.S. page 134 of 1942 Cumulative Annual Pocket Part) provides that "every employee while on sabbatical leave of absence shall be considered to be in regular full-time daily attendance . . . during the period of said leave, *for the purpose of determining the employe's length of service and the right to receive increments,* as provided by law" (italics supplied). The clause italicized clearly shows that a teacher on sabbatical leave is "considered in daily attendance" *only* for the purpose of preserving his or her status as to continuity of service and as to the right to receive increments based on such continuity of

service. This "attendance" is a fiction created by statute solely for the protection of the teacher; it was not intended to give the school board any control over the teacher's domestic affairs while on sabbatical leave. This conclusion is fortified by sec. (i) which provides that "A sabbatical leave granted to a regular employee shall also operate as a leave of absence without pay from all other school activities." [1] Since a teacher on such leave is separated from all *school* activities and may be sojourning in a foreign land, why should the board of directors be concerned with her *domestic* affairs?

Having performed ten years of satisfactory teaching service, Mrs. Snyder was legally entitled to the sabbatical leave of absence which was hers when she became a mother. To require her to apply for *another* leave of absence covering the year's absence already granted her, because *after* being granted the one leave of absence she became pregnant, impresses me as being vain, useless and absurd. Since such a requirement would serve no legitimate public purpose, it would be an unwarranted invasion of her right of privacy [2]—a trespass upon "the sacred precincts of private and domestic life." I do not believe that the School Code of this Commonwealth confers power on any school board to require a teacher to make such a disclosure of a strictly personal matter when she is on a sabbatical leave of absence from her school duties. A rule requiring this is "*un*reasonable" and therefore beyond the power of any school board to make.

I find nothing in the conduct of this teacher which amounts to "persistent and wilful violation of the school

---

[1] This provision has been a part of the School Code since the Act of July 1, 1937, P. L. 2579.

[2] ". . . The common-law secures to each individual the right of determining, ordinarily, to what extent his thoughts, sentiments and emotions shall be communicated to others . . .": Warren and Brandeis on "The Right to Privacy". See page 289 in "The Curse of Bigness." See also Blackstone, Vol. 4 (Lewis Ed.) p. 1570; and Wharton's Criminal Law, Vol. 2 (12 Ed. 1932), Sec. 1718, p. 2003.

laws".[3] That was the charge made against her and in my opinion it was not sustained.

Mr. Justice STERN and Mr. Justice PARKER concur in this dissenting opinion.

---

[3] See the Act of April 6, 1937, P. L. 213, Sec. 2, p. 216, setting forth: "the only valid causes" for which a school board can terminate a teacher's contract of employment.