CYNTHIA TUCKER *v.* BOARD OF EDUCATION OF THE TOWN OF NORFOLK

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued October 17, 1978—decision released May 29, 1979

*Thomas N. Sullivan,* for the appellant (defendant).

*Martin A. Gould,* for the appellee (plaintiff).

LONGO, J. The defendant board of education of the town of Norfolk has appealed to this court from the judgment of the Court of Common Pleas sustaining the plaintiff's appeal from the action of the board terminating her contract of employment to teach in the town's school system.

The trial court's limited finding[1] and the record disclose the following: The plaintiff, Cynthia Tucker, commenced her teaching employment in 1971 and achieved tenure status in September, 1975, when she began her fourth continuous year of employment as a special education teacher. On or about August 21, 1975, she requested from her immediate supervisor, in writing, a four-day leave of absence to allow her to accompany her husband to San Francisco for a fully paid business conference for which he had successfully competed. The plaintiff stated that the first two days of leave would be covered through the use of her personal days as granted in the teachers' contract. As for the remaining two days of her requested leave, the plaintiff expected that her salary would be prorated and deducted. The request was denied, and the plaintiff made a second request which was also denied for the sole

---

[1] The court heard no evidence but determined the case solely by a review of the record on appeal, and therefore filed a limited finding.

reason that it was too early in the school year for such a leave. The plaintiff was warned that in the event she took the leave of absence without permission, she would be subject to the penalties provided in § 10-151 of the General Statutes. The plaintiff took the leave of absence[2] despite the defendant board's denial of her request.

Following her return, the plaintiff was notified that the termination of her contract of employment with the board of education was under consideration "because of insubordination." The plaintiff requested a private hearing before an impartial hearing panel and in a unanimous decision dated February 9, 1976, the panel made a finding "that the conduct in question constituted insubordination and that nonetheless under the circumstances in this case the Board of Education is not justified in terminating her employment contract for reason of insubordination." The hearing panel recommended that, instead of dismissing the plaintiff, the board of education give her a letter of reprimand and a five-day disciplinary suspension without pay "for defying its determination on her requested leave of absence." Nevertheless, by letter dated February 26, 1976, the plaintiff was notified that the board, at a meeting, voted not "to renew" her contract for the 1976-1977 school year. The plaintiff's appeal to the Court of Common Pleas was sustained and it is from that judgment that the defendant board has taken the present appeal to this court.

---

[2] It should be noted that the collective bargaining agreement between the board of education and the Norfolk education association authorized two personal day absences per year without the necessity for presenting an excuse. Thus, the plaintiff applied for only two additional days leave of absence which were permitted, but not automatically authorized, by the collective bargaining agreement.

Section 10-151[3] of the General Statutes provides that a tenured teacher's contract of employment may be terminated at any time for one or more of five specific reasons, including "insubordination against reasonable rules of the board of education." General Statutes § 10-151 (b) (2). At the impartial panel hearing the plaintiff argued that, having been notified that termination of her contract was under consideration based on insubordination, she was entitled to have her termination based solely on the reason stated in subsection (b) (2), namely, that she had been insubordinate "against reasonable *rules* of the board of education." (Emphasis added.)

The trial court concluded that the board's denial of the plaintiff's request for a leave of absence was a decision and not a rule and could not be construed as an established standard or regulation. We agree. By definition, a rule is an "established standard, guide, or regulation; a principle or regulation set up by authority, prescribing or directing action or forbearance; as, the rules of a legislative body, of a company, court, public office, of the law, of ethics." Black's Law Dictionary, p. 1496. The term "imports

[3] "[General Statutes] Sec. 10-151. . . . (b) Beginning with and subsequent to the fourth year of continuous employment of a teacher by a board of education, the contract of employment of a teacher shall be renewed from year to year, except that it may be terminated at any time for one or more of the following reasons: (1) Inefficiency or incompetence; (2) insubordination against reasonable rules of the board of education; (3) moral misconduct; (4) disability, as shown by competent medical evidence; (5) elimination of the position to which the teacher was appointed, if no other position exists to which he may be appointed if qualified; or (6) other due and sufficient cause; provided, prior to terminating a contract, a board of education shall give the teacher concerned a written notice that termination of his contract is under consideration and, upon written request filed by such teacher with such board within five days after receipt of such notice, shall within the next succeeding five days give such teacher a statement in writing of its reasons therefor. . . ."

something of permanence and fixity in general with respect to all factual situations coming within it." 77 C.J.S., Rule, p. 544; see *Kirby* v. *Nolte,* 349 Mo. 1015, 164 S.W.2d 1 (1942). The board's decision denying the plaintiff's request for a leave of absence did not have the qualities described above. It was, rather, a decision applicable only to the particular facts concerning the plaintiff's request.[4] Absent a specific rule, the board was without a valid basis to support a finding that the plaintiff's conduct constituted "insubordination against reasonable rules of the board of education." The decision of the board must be based upon the evidence directed to the specific charge, and the burden was on the board to allege and prove the specific ground for termination. See *Conley* v. *Board of Education,* 143 Conn. 488, 496, 123 A.2d 747 (1956). On the basis of the record before us, we conclude that absent a specific "rule" of the board, the statutory ground for the termination of the plaintiff's contract of employment under § 10-151 (b) (2) did not exist, and the court did not err in its decision to that effect.

We next consider the defendant board's assignment of error relating to the applicability of § 10-151 (b) (6) as a valid ground for termination of the plaintiff's contract of employment. As a general rule, where statutes specifically enumerate the causes for which a teacher may be removed or dismissed, a teacher cannot be removed or dismissed for any other cause. *Conley* v. *Board of Education,* supra; see *McQuaid* v. *State,* 211 Ind. 595, 6 N.E.2d 547 (1937); *Jameson* v. *Board of Education,* 74 W. Va. 389, 81 S.E. 1126 (1914); *State ex rel.*

---

[4] In fact, the plaintiff testified, without contradiction, that other teachers had been given leaves of absence for trips, and that no request for leave had ever been refused.

*Thompson* v. *School Directors,* 179 Wis. 284, 191 N.W. 746 (1923). As we have initially indicated, the statute provides that a tenured teacher's contract may be terminated at any time for any one or more of the five specific reasons stated in §§ 10-151 (b) (1) through 10-151 (b) (5) or "(6) *other* due and sufficient cause." (Emphasis added.) The trial court concluded that in order for "other due and sufficient cause" to form the basis for the termination of the plaintiff's contract of employment as provided by § 10-151 (b) (6) of the General Statutes, the defendant was required to state "other due and sufficient cause" as the reason for considering termination. The board contends that insubordination in and of itself constitutes "other due and sufficient cause" for the termination of the plaintiff's contract and is a valid statutory basis for dismissal under the provisions of § 10-151 (b) (6). We agree with the board's contention.

In interpreting teacher tenure statutes similar, and in some instances identical, to General Statutes § 10-151, other courts have held that, in addition to the specifically enumerated causes for dismissal, a tenured teacher's contract may be terminated for "other good and just cause," without specification of the reason. *McQuaid* v. *State,* supra; 68 Am. Jur. 2d, Schools § 183; see generally annots., 110 A.L.R. 791, 805; 113 A.L.R. 1495; 127 A.L.R. 1298, 1317. For example, in *Rinaldo* v. *School Committee of Revere,* 294 Mass. 167, 169, 1 N.E.2d 37 (1936), the court stated that "[g]ood cause includes any ground which is put forward by the [school] committee in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the committee's task of building up and maintaining an efficient school system." See also *Stiver* v. *State*

*ex rel. Kent,* 211 Ind. 380, 1 N.E.2d 1006, reh. denied, 211 Ind. 387, 7 N.E.2d 183 (1937). The jurisdiction and discretion to determine what these causes may be rests in the hands of the school authorities. Cf. *Adam* v. *Connecticut Medical Examining Board,* 137 Conn. 535, 537, 79 A.2d 350 (1951).

Although we do not go so far as to hold that a teacher's contract may be terminated for *any* reason under the "other due and sufficient cause" clause of General Statutes § 10-151 (b) (6), we hold that a teacher may be dismissed for conduct constituting insubordination under the "other due and sufficient cause" provision of that statute.[5] See *Fernald* v. *City of Ellsworth Superintending School Committee,* 342 A.2d 704 (Me. 1975) ; *State ex rel. Steele* v. *Board of Education,* 252 Ala. 254, 261, 40 So. 2d 689 (1949).

The plaintiff appears to argue that the "other due and sufficient cause" provision of § 10-151 (b) (6)

[5] The plaintiff also argues that our statements in *Conley* v. *Board of Education,* 143 Conn. 488, 123 A.2d 747 (1956), dictated that the board state "other due and sufficient cause" as the reason for the proposed termination of the plaintiff's contract. We disagree. Although in *Conley* we stated (p. 496) that "[t]he decision of the board must be based upon the evidence directed to the specific [ground of termination] and upon no other," the test of the action of the board is "whether the plaintiff had a reasonable opportunity to hear and to be heard upon the charges preferred against him and whether the proceedings were conducted in a fair and impartial manner." *Id.,* 493–94. The record before us demonstrates overwhelmingly that the plaintiff was apprised of the charge of insubordination and was heard in rebuttal to that charge. Neither can it be said that the plaintiff was not prepared to address that charge at the proceedings before the hearing panel. All of the evidence presented by the board was directed at the plaintiff's "insubordination." In view of this, the fact that the board proceeded under the "other due and sufficient cause" provision of § 10-151 (b) (6) does not violate our statements in *Conley* that the evidence presented against the teacher must be directed to the specific ground of termination.

is too vague to permit notice of the actual charges against her. A similar argument was made in *diLeo* v. *Greenfield*, 541 F.2d 949 (2d Cir. 1976). There the plaintiff contended that § 10-151 (b) (6) failed to inform him sufficiently of the kind of conduct which was proscribed. There was evidence that the teacher had engaged in a persistent pattern of neglecting his duties and harassing and humili- ating students and that his conduct worsened after he met with school administrators and students regarding his classroom performance. The court stated (p. 953) : "In these circumstances it cannot be said that diLeo did not or should not reasonably have known that such behavior constituted due and sufficient cause for dismissal."[6] In the present appeal, the plaintiff upon request received written notification that the board was considering termina- tion of her contract because of insubordination. The record is devoid of any claim that the plaintiff was unaware of the charge against her, or that she was prejudiced by the board's failure to state "other due and sufficient cause" or to specify that insubordina- tion was, in fact, the other due and sufficient cause contemplated by the board's notice.

Since we decide that under the provisions of § 10-151 (b) (6) insubordination constitutes legal cause for termination of a tenured teacher's contract

---

[6] In finding that § 10-151 (b) (6) was not constitutionally infirm, the court in *diLeo* v. *Greenfield*, 541 F.2d 949 (2d Cir. 1976), applied the principle of ejusdem generis, stating (p. 954) that "[w]here general terms in a statute follow enumeration of terms with specific meaning, the general terms can be expected to apply to matters similar to those specified." See *Griffin* v. *Fancher*, 127 Conn. 686, 690, 20 A.2d 95 (1941). Under the principle of ejusdem generis, we construe the word "insubordination" as referring to the conduct of the plaintiff which is akin or equivalent to conduct specified in § 10-151 (b) (2), namely, insubordination against reasonable rules of the board.

of employment as a matter of law, we are further satisfied that the evidence was clearly sufficient to sustain the opinion of the impartial hearing panel and the board that the plaintiff was guilty of insubordination.

Having decided that insubordination is a ground for termination, and that the plaintiff was insubordinate, we now pass to the issue whether the board was justified in terminating the plaintiff's contract of employment.

Although courts in other jurisdictions have decided that a single instance of misconduct or disobedience to a reasonable order of the school authorities may constitute grounds for dismissal of a tenured teacher; see *Yuen* v. *Board of Education,* 77 Ill. App. 2d 353, 222 N.E.2d 570 (1966); the majority of cases we have examined indicate that dismissal is warranted only upon a showing of a course of persistent misconduct or a series of varied acts of impropriety on the part of the teacher. See *Crownover* v. *Alread School District No. 7,* 211 Ark. 449, 200 S.W.2d 809 (1947); *Midway School District* v. *Griffeath,* 29 Cal. 2d 13, 172 P.2d 857 (1946); *Board of Education* v. *Shockley,* 52 Del. 237, 155 A.2d 323 (1959); *Board of School Directors* v. *Snyder,* 346 Pa. 103, 29 A.2d 34 (1942); *Fresno City High School District* v. *DeCaristo,* 33 Cal. App. 2d 666, 92 P.2d 668 (1939); cf. *Marcato* v. *Board of Education,* 40 App. Div. 2d 978, 338 N.Y.S.2d 209 (1972). In either case, the decision to terminate must be reached after a careful examination of all pertinent factors relating to the particular situation, with due consideration of the effect the teacher's conduct will have on the school authorities as well as on the students. The board's equating of a single

act of disobedience with a course of conduct amounting to persistent disobedience requires consideration of the reasonableness of its order terminating the plaintiff's employment.

Our consideration of the board's decision proceeds from the point that the impartial hearing panel, as indicated previously, unanimously found that, although the plaintiff had been insubordinate, her conduct did not merit the termination of her employment. In this connection, the statements and recommendation of the panel[7] are particularly significant. Notwithstanding the recommendation of the panel, however, the board terminated the plaintiff's contract of employment. We are of the opinion that, although there are circumstances indicating that the plaintiff was "insubordinate" in her conduct, a review of the entire record discloses that the drastic disciplinary action of dismissal constituted exceedingly excessive punishment for the plaintiff's misconduct, and an abuse of discretion, especially in the light of the plaintiff's excellent

[7] "[Part of Finding of Impartial Hearing Panel] . . . We find that while she merited discipline for this insubordination, dismissal is too drastic a penalty. The statute does not require dismissal for incompetence, insubordination, etc., but simply permits it. Not all incompetence, insubordination, etc. calls for dismissal. In deciding on the appropriate penalty for an offense, such as this, one should consider not only the fact of insubordination but also a teacher's prior record, whether this was a first offense, and the nature of and motivation for the insubordination.

"It was unrebutted that Mrs. Tucker is a competent, dedicated teacher in a difficult discipline and is of considerable value to the Norfolk school system. It is also undisputed that this was her first infraction, and that it was brought on by a conflict in what she felt were her responsibilities to her husband and to the Norfolk school system. While we do not condone her action, we think that her obligations to her employer would best be dealt with and the children of Norfolk best served, if the penalty in question is reduced to a letter of reprimand and a five-day disciplinary suspension without pay, and we so recommend."

and unblemished school record as a capable, dedicated teacher. *Mitthauer* v. *Patterson*, 8 N.Y.2d 37, 167 N.E.2d 731 (1960); *McGinnis' Broadway Restaurant* v. *Rohan*, 6 N.Y.2d 770, 159 N.E. 2d 211 (1959); *Marcato* v. *Board of Education*, 40 App. Div. 2d 978, 338 N.Y.S.2d 209 (1972); *Tessier* v. *Board of Education*, 24 App. Div. 2d 484, 260 N.Y.S.2d 789 (1965); *Stolz* v. *Board of Regents*, 4 App. Div. 2d 361, 165 N.Y.S.2d 179 (1957); cf. *Fresno City High School District* v. *Dillon*, 34 Cal. App. 2d 636, 94 P.2d 86 (1939); *Fresno City High School District* v. *DeCaristo*, supra.

In sum, we conclude that the action of the board in terminating the plaintiff's contract of employment was not warranted and thus arbitrary and illegal.

The trial court concluded that the procedures required by statute concerning the termination of the plaintiff's contract had not been followed, thereby nullifying the board's action. We have concluded, however, that the board's notice to the plaintiff was sufficient, and thus that the board had jurisdiction to take some action against the plaintiff, short of the termination of her contract. The trial court erred in holding the board's action a nullity. The case must be returned to the board for the imposition of a penalty consistent with the views expressed in this opinion.

There is error, the judgment is set aside and the case is remanded with direction to return the case to the board for further proceedings consistent with the views expressed in this opinion.

In this opinion LOISELLE, BOGDANSKI and PETERS, Js., concurred.

COTTER, C. J. (dissenting). The majority holds that "the action of the board in terminating the plaintiff's contract of employment was not warranted and thus arbitrary and illegal." I cannot agree.

When acting to terminate a teacher's employment contract, a board of education acts, as an administrative agency, in a quasi-judicial capacity. *Mauriello* v. *Board of Education,* 176 Conn. 466, 469, 408 A.2d 247; *Miller* v. *Board of Education,* 166 Conn. 189, 191, 348 A.2d 584. As such, it exercises discretion in weighing evidence, judging credibility of witnesses, finding facts and making conclusions. *Light* v. *Board of Education,* 170 Conn. 35, 40, 364 A.2d 229; *Conley* v. *Board of Education,* 143 Conn. 488, 492, 123 A.2d 747. On the other hand, the function of the court on appeal is to determine whether the board acted illegally; "and while we have frequently added the words 'arbitrarily or in abuse of its discretion,' this manner of expression merely points to certain aspects in which the illegality may subsist because the conduct of the board would be in violation of the powers granted to and duties imposed upon it." *Jaffe* v. *State Department of Health,* 135 Conn. 339, 353, 64 A.2d 330; *Conley* v. *Board of Education,* supra, 492.

Since the termination of the plaintiff in the present case clearly cannot be said to be in violation of the board's legal powers or duties, the majority's conclusion that this "exceedingly excessive punishment . . . was not warranted" amounts to an improper substitution of this court's judgment for that of the board. I would find error in the trial court's judgment on that ground alone and remand the case with direction to dismiss the plaintiff's appeal.