[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff appeals the decision of the defendant Bristol Board of Education (Board) terminating her contract of employment as a teacher in the Bingham School in Bristol. The plaintiff brings this appeal pursuant to General Statutes10-151(f).
The chronological facts leading to the plaintiff's termination and this appeal are essentially undisputed. The plaintiff was employed by the Board as a home economics teacher at the secondary level from on or about March 18, 1985 to June, 1988. She was laid off by the Board for the 1988-89 school year because of a reduction in force. Plaintiff had attained tenured status under General Statutes section 10-151(b) due to the fact that she had completed three full years of teaching prior to being laid off.
During the 1988-89 school year, while laid off, the plaintiff obtained her elementary certification. Pursuant to the collective bargaining agreement between the Board and the Bristol Federation of Teachers, the plaintiff was hired to fill a vacant elementary teaching position for the 1989-90 school year in accordance with her certification and seniority. In accordance with her choice, she was assigned to teach third grade at the Clarence A. Bingham School. On October 6, 1989, the superintendent of schools reorganized the third-grade classrooms at Bingham School, reducing the number of classrooms CT Page 664 from three to two. The plaintiff was removed from her classroom and made an assistant teacher to the other two third-grade teachers. Their assigned task was to serve as professional role models for the plaintiff as part of the effort to improve her teaching skills. They were specifically not given the responsibility of evaluating her performance, however. The administration took this action because of some concerns about the plaintiff's abilities as an elementary school teacher. Members of the administration began to observe and evaluate the plaintiff in the classroom.
On March 7, 1990, the Board, acting on the recommendation of the superintendent, voted to consider the termination of the plaintiff's teaching contract. On March 19, 1990, Superintendent Maher, in response to a request by the plaintiff for the reasons for her proposed termination, stated:
 Please be advised that this action is a result of your failure to demonstrate an acceptable level of organization, control, and delivery of instructing in your elementary teaching assignment. . . .
 The above reasons constitute grounds for termination under the following subsections of C.G.S. 10-151(d):
 (1) Inefficiency or incompetence; and/or
(2) Other due and sufficient cause.
On March 26, 1990, the plaintiff requested a hearing before an impartial hearing panel (Panel). Following the hearing, two of the three Panel members issued their findings and conclusions recommending to the Board that it adopt Superintendent Maher's recommendation to terminate plaintiff's contract and concluding that the plaintiff "was not competent as a third grade teacher." The third Panel member dissented and recommended that the plaintiff be retained. On November 20, 1990, the Board notified the plaintiff that it had adopted the findings and conclusions of the majority of the Panel and had accepted the recommendation that the plaintiff's contract be terminated, effective immediately.
In its answer, the Board "admits that the plaintiff has been aggrieved by its decision to terminate her employment," and the court so finds.
The plaintiff's revised complaint in this appeal, dated CT Page 665 March 13, 1991, contained three counts. The third count alleged that the Board had breached the plaintiff's contract of employment, and the court granted the defendant's motion to strike that count. In the remaining two counts of her complaint and in her brief and at oral argument on this appeal, the plaintiff makes the following claims:
 1. The decision of the Board to terminate plaintiff's contract was based upon the unlawful conduct, bad faith and/or malice of the Board.
 a. In rendering its decision to terminate plaintiff's teaching contract, the Board failed to consider the testimony of the third grade teachers, Linda Mascaro and Karen Nestico, whose testimony was favorable to the plaintiff.
 b. The statements made by plaintiff during an initial conference on September 22, 1989 between her and school administrators were improperly used by the Board against plaintiff.
 (In her brief, the plaintiff refers to the Board and the Panel indiscriminately. Thus, she claims in 1.a that the Board failed to consider the teachers' testimony, when in fact it was the Panel, not the Board, which took all the evidence in the case and made findings thereon. At oral argument before this court, her counsel explained that her essential claim was that the Board adopted or followed erroneous findings and conclusions of the Panel and thereby committed its own error.)
 2. The Board breached its Agreement with the Bristol Federation of Teachers by its failure to comply with the terms thereunder.
 a. The Board failed to engage in an evaluation procedure designed to enhance the professional performance of the teachers in the Bristol School System, contrary to section 32:1 of the Agreement.
 b. The Board permitted the evaluation of the plaintiff to be conducted by inexperienced and unqualified personnel, contrary to section CT Page 666 32:4.1 of the Agreement.
 c. The Board violated its implied covenant of good faith and fair dealings when it relied on prejudicial and biased testimony.
 3. The Board's failure to provide the plaintiff with sufficient notice and an opportunity to be heard constituted a violation of the Board's covenant of good faith and fair dealings, section 10-151(d) of the General Statutes, and her right to due process.
a. The pre-termination notice was inadequate.
b. The post-termination notice was inadequate.
The plaintiff's claims in 2., above, are essentially the same as were alleged in the breach of contract count of her complaint, which was ordered stricken by the court.
The court has considered the plaintiff's claims in 3., above, and examined the record in connection with those claims. The court concludes that the pre-termination and post-termination notices were adequate for their purposes.
In support of her claims in 1.b., above, the plaintiff claims that the collective bargaining agreement prohibited the admission in evidence of certain statements she made to the assistant superintendent of schools in Bristol and the principal of the Bingham School at a meeting with them prior to the commencement of the termination proceedings. The court has considered this claim and examined the record in connection with it. The court concludes that the claim cannot be sustained because the plaintiff failed to make any objection to the admission in evidence of the prior statements at the hearing before the Panel. See, Finkenstein v. Administrator, Unemployment Compensation Act, et al., 192 Conn. 104, 114
(1984).
The plaintiff's claim in 1.a., above, is based on statements in the majority decision of the Panel concerning Linda Mascaro and Karen Nestico, the two third grade teachers with whom the plaintiff was assigned to work immediately prior to being terminated. The statements in question are as follows:
 The plan to have the plaintiff work with Mascaro and Nestico was placed into effect in good faith and carried out in good faith. It was agreed at the outset that the third grade teachers would serve as role models and would not make CT Page 667 recommendations about Mrs. Kim's abilities, and they did not make such recommendations. It would have been a violation of that understanding to have called them as witnesses, and their failure to testify played no role in the Impartial Hearing Panel's decision. Record No. 3, Findings and Conclusions, Majority, p. 10. (Emphasis added).
In fact, both Mascaro and Nestico testified at length at the hearing before the Panel. Record, transcript August 1, 1990, Mascaro p. 46 et seq., Nestico p. 87 et seq. The court has reviewed this testimony and finds it to be favorable to the plaintiff. In particular, both of these witnesses testified about an accusation that the plaintiff had not permitted a child to go to the bathroom and the child had wet her pants as a result. This was the subject of a memorandum from the school principal reprimanding the plaintiff. The memorandum was an exhibit in evidence at the hearing before the Panel. The testimony of Mascaro and Nestico, however, tended to exonerate the plaintiff of any fault in this incident. Mrs. Nestico also testified on another subject area about which the plaintiff had received written criticism. This was the practice of having children sit on their books which were not in use, rather than stashing them under their chairs or elsewhere. Mrs. Nestico testified that this had been her technique and that the plaintiff had likely picked it up from her as the plaintiff's designated role model. Record, transcript August 1, 1990, pp. 95-98. This testimony tended to diminish the impact of at least four pieces of documentary evidence on the subject, adverse to the plaintiff, which were admitted at the hearing before the Panel. Record, Joint Exhibit 15; Administration Exhibit 29.
Both Mascaro and Nestico also testified that they were not aware of any problems in their classrooms on days when the plaintiff was in sole charge of them. In general, as indicated above, the lengthy testimony of these two witnesses was favorable to the plaintiff.
In response to the plaintiff's contentions regarding the majority Panel's statements concerning Mascaro and Nestico, the Board advances two arguments. First, the Board argues that the majority Panel's statement in its decision does not mean that Mascaro and Nestico didn't testify at all; it merely means that they didn't testify specifically about evaluating the plaintiff, because that would have violated the terms of their agreement to work with her. That argument is fatally undermined, however, by the plain words of the decision: "It would have been a violation of that understanding to have called them as witnesses, and their failure to testify played no role in the Impartial Hearing Panel's decision." (Emphasis added). The CT Page 668 court would to denude the underscored words of all meaning in order to reach the interpretation urged by the defendant Board.
In the alternative, the Board argues that the majority members of the Panel did not base their findings and conclusions on the subject matter of the teachers' testimony and, therefore, overlooking that testimony was not significant. At oral argument, the Board's counsel pointed out that the majority decision explicity avoided the bathroom incident as a basis for its conclusion that the plaintiff should be terminated, stating only that "a clear picture does not emerge" and that it is a "difficult" issue. Record No. 3, Majority decision, p. 14. But this argument likewise falls short. It is not possible to speculate what impact the teachers' testimony would have had on the majority findings if those Panel members had considered it. In this regard, for example, the court notes that the dissenting decision by the third Panel member found that the teachers' testimony to some degree undermined evidence, adverse to the plaintiff, which was provided by a chief administration witness, Dr. Serratore. Record No. 5, Dissenting decision, p. 12.
Pursuant to General Statutes 10-151(d), the Panel acted as a fact-finder and, under the same provision, was required to make a recommendation to the Board. Although the Board was free to accept or reject the Panel's recommendation, it was bound to accept the Panel's factual findings and conclusions unless unsupported by the evidence or unless the Panel acted illegally, arbitrarily or capriciously. Rado v. Board of Education,216 Conn. 541, 555 (1990); Catino v. Board of Education, 174 Conn. 414,418 (1978). In Tucker v. Board of Education, 177 Conn. 572
(1979), the court emphasized the importance of the fact-finding function, holding that "the decision to terminate must be reached after a careful examination of all pertinent factors relating to the particular situation. . . ." Id., 580.
In the present case, the fact-finding function was obviously deficient. The Panel's statement that certain testimonial evidence did not exist was demonstrably and grossly erroneous. As such, it calls into question all of the other findings and conclusions of the Panel. This, in turn, infected the Panel's recommendation that the plaintiff be terminated, because that recommendation was based on the faulty fact-finding. The Board's decision adopting that recommendation was, therefore, likewise in error and may not stand.
Before issuing the appropriate order in this case, it is necessary to address the plaintiff's claim, in her prayer for relief, for costs, including reasonable attorney fees. This claim is based on the provision in General Statutes 10-151(f) CT Page 669 that "(c)osts shall not be allowed against the board of education unless it appears to the court that it acted with gross negligence or in bad faith or with malice in making the decision appealed from." Although the plaintiff has alleged such misconduct, the court finds no evidence of it in the record. There was some evidence that individual members of the school administration may have made statements about the plaintiff which indicated that they were biased against her because of her race or national origin, but there was nothing to connect that conduct to members of the Board. There is nothing to indicate that either the Panel or the Board based the decision to terminate the plaintiff on her race or national origin. The plaintiff also alleges that the Board was guilty of gross negligence because it "failed to consider the testimony of the third grade teachers" in rendering its decision. The court has, of course, considered this claim and ruled in favor of the plaintiff in the context of deciding the validity of the Board's decision. The ruling that the Board's decision may not stand, as discussed above, is based on the court's conclusion that the underlying fact-finding process by the Panel was deficient. In order to find that the Board, as opposed to the Panel, was guilty of gross negligence, however, it would be necessary to impute the panel members' omissions to the members of the Board. The court declines to make that leap. The findings and conclusions of the Panel members were the result of their own mental processes. The Board was entitled to receive and act on the Panel's recommendations, but it cannot be blamed or held accountable for the Panel's deficiencies as proposed by the plaintiff. It was error for the Board to base its decision on faulty fact-finding by the Panel, but it was not gross negligence to do so.
The plaintiff has requested permission to introduce additional evidence to establish gross negligence, bad faith or malice on the part of the Board. This request is based on the provision in section 10-151(f) that the court may allow such evidence when it "appears. . .necessary for the equitable disposition of the appeal." However, all of the plaintiff's assertions of misconduct relate either to members of the school administration or members of the Panel. The plaintiff makes no factual assertions of misconduct by any member of the Board. Accordingly, it does not appear to the court that additional evidence is available that would support a finding that the Board was guilty of gross negligence, bad faith or malice in reaching its decision.
For all of the above reasons, the court declines to award costs or attorney fees to the plaintiff in this action. The plaintiff's motion to present additional evidence relating to misconduct on the part of the Board is denied. CT Page 670
General Statutes 10-151(f) provides only that the court may "affirm or reverse" the decision of the Board. In this case, for the reasons set forth above, the court reverses the decision of the Board. Where the Board's action in terminating the teacher's contract was not warranted under the particular circumstances, because of defective fact-finding by the Panel in this case, but where the Board did have jurisdiction to act in the matter, it is proper to return the case to the Board for further action. Tucker v. Board of Education, supra, 582. The court notes that this is not simply a case where the facts in evidence do not support the findings and conclusions of the agency. In such a case, reversal is the proper remedy and a remand would be inappropriate. In the present case, however, the fact-finder overlooked relevant, material evidence that it had in the record, and it is impossible for this court to determine what effect that evidence might have had if it had been considered. It is, therefore, appropriate to return the case for further action by the Board.
It is likewise proper in such cases for the court to order the teacher reinstated. Catino v. Board of Education, supra, 419. Since no evidence was offered as to the amount of compensation due her, an evidentiary hearing on that subject is necessary. Accordingly, the court will advise the parties of the date of such hearing.
The decision of the Board is reversed; the plaintiff is ordered reinstated retroactively to the date of her termination; is returned to the Board for further proceedings at the the case is returned to the Board for further evidence on the subject of compensation.
Maloney, J.