[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I
STATEMENT OF THE CASE
This is an appeal from the decision of the Stafford Board of Education to terminate the plaintiff's employment as a teacher in the Stafford school system, At all times relevant hereto plaintiff was a tenured teacher assigned as a high school guidance counselor. He also held supplementary pay positions as, among other things, a baseball coach and girl's basketball coach. On May 20, 1991 an arrest warrant was issued for plaintiff for, inter-alia, possession of cocaine. On May 29, 1991 he surrendered to state police and was arrested. The same day he admitted to school officials of the Stafford school system that he had possessed and used cocaine. On August 29, 1991 he made the same admission in court and was granted accelerated rehabilitation. Following various notifications that the defendant would consider the termination of plaintiff's contract, plaintiff requested a private. hearing before an impartial panel. A panel of three was named, and it held private hearings in 1992 on January 23, February 5, March 5, April 14, May 26, and May 28. The parties then filed briefs. The members of the panel reviewed, separately and then jointly, the evidence, transcripts of the hearing, exhibits and briefs and set out its findings and recommendations by document dated June 17, 1993 which is part of the record. The recommendation by a two to one vote was that the plaintiff be returned to his employment. Following the receipt of the panel's said findings and recommendations, the defendant, on July 6, 1993, voted to terminate plaintiff's employment. A letter to plaintiff dated July 7, 1993 stated, inter-alia, that the termination was based upon the panel's finding of facts and concluded that plaintiff's possession and use of cocaine ". . . . constitutes moral misconduct and other due and sufficient cause for the termination of your employment under §10-151(d)(3) and (6) of the Connecticut General Statutes, and has undermined your effectiveness as a teacher in the Stafford Public Schools." Subsequently, plaintiff filed this appeal.
The court heard evidence outside the record on January 6, 1995 and concluded therefrom, by Memorandum of Decision dated March 28, 1995, that Gabriel Moquin, Chairman of the defendant Board of CT Page 6708 Education at all relevant times, was not biased against the plaintiff and did not prejudge his case before the defendant Board.
 II
Aggrievement:
The parties, through counsel, stipulated in open court that the plaintiff was and is the teacher whose employment was terminated on July 6, 1993 and who is the subject teacher in this action. The court, therefore, finds that the plaintiff was aggrieved by the defendant's decision to terminate his employment. The element of aggrievement is found.
 III
Standard of Review:
Our function (of the court) in reviewing the action of the board (of education) pursuant to General Statutes § 10-151(f)[1] is to determine whether the board has acted illegally and not to substitute our (the court's) judgment for that of the Board. Radov. Naugatuck Board of Education, 216 Conn. 541, 555 (1990).
"On appeal the court must determine whether the appropriate procedure under General Statutes § 10-151 and the state and federal constitutions was employed . . . . and whether the evidence relied upon was reliable and substantial and, if believed, sufficient to establish cause under the statute" Lee v. Bristol Board ofEducation, 181 Conn. 69, 81 (1980).
"A school board `has discretion to accept or reject a recommendation from an impartial hearing panel,' though it is bound by the panel's findings of fact unless unsupported by the evidence." Rado, supra at page 555.
 IV
Issues to be Decided:
The parties stipulated in open court that any claims of violation of the Americans with Disability Act or any other federal statute will be taken up in federal court and that such claims are not to be decided in this case. CT Page 6709
The issues before the court focus, then, on whether the defendant had sufficient reason to conclude:
 1. that the plaintiff's conduct constituted "moral misconduct;"
2. and/or "other due and sufficient cause."
These are two reasons either one of which is sufficient to terminate a teacher's employment under General Statutes § 10-151(d) (3) and (6). These are the reasons given by the defendant for its action.
Finally, there is the issue of whether the defendant's said action violated plaintiff's equal protection rights under Amendment twenty one of the Connecticut Constitution.
 V
Discussion:
It should be remembered that the impact of the plaintiff's conduct upon the operation of the school is a significant consideration. Rado, supra at page 554.
1. Moral misconduct:
Plaintiff admitted to school officials and in open criminal court the possession and use of cocaine. Paragraphs 10, and 26 of the panel's finding of fact. Possession and/or use of cocaine is a felony in Connecticut. Paragraph 25 of panel's findings of fact (hereinafter also referred to as "Findings").
"A legislative determination that certain conduct should be punished as a crime is highly significant in deciding whether it constitutes `moral misconduct'." Rado, supra, at page 553. Further, conduct punishable as a felony, even without a conviction, can be considered moral misconduct. In Rado, supra, the panel found, based upon testimony of an investigator from the chief state's attorney's office, that Mr. Rado had tampered with the school telephone system for the purpose of overhearing conversations of other persons, and that this conduct was prohibited by General Statutes § 53a-189, which makes such eavesdropping a felony. In that case, Mr. Rado was acquitted of the criminal charges in court but, nevertheless, the Supreme Court CT Page 6710 still upheld the Board's conclusion of moral misconduct saying that its conclusion cannot be characterized as arbitrary or illegal.Rado at pg. 553. In the case at bar the evidence was even stronger in that the plaintiff admitted twice conduct that constituted a felony. In Rado, the conduct was on school grounds whereas here plaintiff's conduct as described was not on school grounds. However, that was not the basis of the court's decision nor was the fact that Mr. Rado's conduct was intentional a factor in the court's decision. It was based on the fact that Mr. Rado's conduct constituted a felony. That is the case at bar. Plaintiff's conduct constituted a felony based upon his own admissions even if because of his drug dependency it was not intentional. Despite plaintiff's argument, there is no law, statutory or case law, that requires the conduct to be intentional in order to be moral misconduct.
2. Other due and sufficient cause:
The Connecticut Supreme Court has treated that phrase as equivalent to "good cause." Rado, pg. 554. "`Good cause includes any ground which is put forward by the (school) committee in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the committee's task of building up and maintaining an efficient school system'" Rado, pg. 554. Citing Tucker v.Board of Education, 177 Conn. 572 (1979), the Rado court stated at pg. 554 that "`the decision to terminate must be reached after a careful examination of all pertinent factors relating to the particular situation, with due consideration of the effect the teacher's conduct will have on the school authorities as well as on the students.'"
The Findings included the following:
12. The arrest and the charges against Mr. Burns were reported in thirteen newspaper articles from May 29, 1991 through August 30, 1991.
13. The arrest and the criminal charges against Mr. Burns were reported on television.
37. The Board has a policy against drug use.
38. State mandates require instruction regarding the understanding and avoiding of drugs as part of the regular school curriculum in Connecticut public schools. CT Page 6711
39. Mr. Burns was a member of the Drug Abuse Prevention and Drop Out Prevention Committee which developed the substance abuse curriculum for Stafford High School. The substance abuse curriculum has a goal of preventing students from initiating the use of illegal drugs.
42. The Board has rules for interscholastic participation in team sports which prohibits the use or possession of, among other things, cocaine.
43. Students have been excluded from interscholastic participation for violation of the rule regarding drug and alcohol possession or use.
44. The Stafford High School guidance counselor description requires, among other things, the counselor to: (a) create a climate conducive to counselling; (b) counsel students and parents on matters relating to the students' adjustment to school; (c) make preliminary evaluation of the problems of students referred by teachers, administrators and others; (d) participate in professional development programs, committee work and school events; (e) maintain positive communications with students, parents, administrators and professional staff members regarding educational programs and student performance; (f) assist administration and staff in postering (sic) (fostering) appropriate school behavior; (g) adhere to school and board education policies, procedures and administrative regulations.
45. As a high school guidance counselor and coach, Mr. Burns was responsible for enforcing the policies and rules of the Board and Stafford High School in both the regular curriculum and interscholastic participation.
46. Teachers, including guidance counselors, serve as role models for students.
47. Some students at Stafford High School were shocked and upset when they heard of Mr. Burns' arrest, while others were supportive of Mr. Burns.
48. Some students at Stafford High School do not want Mr. Burns to return to his employment at the school, while other students were not so affected. CT Page 6712
49. Mr Burns' arrest caused some students not to trust him or to trust him less, while it did not affect others' trust in him.
50. Some parents of Stafford public school children were shocked and upset when they learned of Mr. Burns's arrest for, among other things, possession of cocaine, while other parents were not so affected.
51. Some parents of Stafford public school children do not want Mr. Burns to return to his employment at Stafford High School, while others do want him to return.
52. Mr. Burns' arrest caused some parents not to trust him or to trust him less, while other parents were not so affected.
53. Some faculty at Stafford High School were shocked and upset when they learned of Mr. Burns arrest for, among other things, possession of cocaine, while others were not so affected.
54. Some faculty at Stafford high School do not want Mr. Burns to return to his employment at the school, while other faculty want him to return.
55. Mr. Burns' arrest caused some faculty not to trust him or to trust him less, while other faculty were not so affected.
56. Mr Burns' arrest caused some administrators not to trust him or to trust him less.
57. The Stafford Superintendent of Schools and the Stafford High School Principal do not want Mr. Burns to return to his employment at the school.
58. An individual with expertise in school guidance testified that Mr. Burns' arrest and the surrounding publicity detrimentally affects his ability to perform his job and should result in his termination.
The reasons given by the Board in its response to plaintiff's request for a more specific statement as to the reasons for theconsideration of termination are contained in finding 24.
" 1. Moral Misconduct:
CT Page 6713
 a. possession of cocaine; b. self-admitted use of cocaine; c. request for accelerated rehabilitation regarding the charge of possession of cocaine;
 2. Other due and sufficient cause:
 a. possession of cocaine; b. self-admitted use of cocaine; c. request for accelerated rehabilitation regarding the charge of possession of cocaine; d. the attendant publicity of Mr. Burns' situation, as chronicled in a. through d. (sic) above (hereinafter "actions"), have caused him to be unable to effectively fulfill his responsibilities and duties as a guidance counselor in the Stafford School System; e. Mr. Burns' actions have demonstrated a lack of awareness or indifference to the public policy against the use of illegal drugs; f. Mr. Burns' actions have demonstrated a lack of awareness or indifference to the needs of the students and his position of trust with students in the Stafford School System; g. Mr. Burns' actions have created a lack of trust among the parents in the Stafford School System; h. Mr. Burns' actions have caused a lack of trust among the administration and staff of the Stafford School System.
By each one or all of the above, Mr. Burns has failed to meet the minimal acceptable standards of conduct for a guidance counselor in the Stafford School System"
In its termination letter of July 7, 1993 the defendant stated, inter-alia that the conduct ". . . has undermined your effectiveness as a teacher in the Stafford Public Schools."
The Findings above-mentioned clearly supported a conclusion that the effect "on the school authorities" i.e. some administrators, and the Superintendent of Schools and the Stafford High School principal, (par. 56 and 57 of Findings) was adverse to the plaintiff. There were also adverse effects on some students, parents, and faculty. There were clearly facts that allowed the defendant to conclude that there was sufficient negative impact CT Page 6714 upon the school community and that the conduct had undermined the plaintiff's effectiveness as a teacher in the Stafford Public Schools. The transcripts of the hearings conducted by the Panel and the Exhibits (which the court has reviewed) contain sufficient and reliable evidence to support the Findings of Fact.[2]
The court also finds that there is a rational and substantial nexus between the plaintiff's conduct and the school even though the conduct was not on school grounds based upon the notoriety his conduct received, and the conduct itself and the adverse effect they had on his effectiveness as a teacher. Therefore, there was good cause to terminate plaintiff's employment.
For all the reasons aforesaid the court finds that the conclusions of the Board were supported by the Findings of Fact of the Panel and satisfy the statutory criteria for termination. The evidence relied upon was reliable and substantial. The decision of the defendant was not arbitrary or illegal.
 VI
Was the decision a violation of Plaintiff's rights under theConnecticut Constitution, Amendment Twenty-one?
Plaintiff also claims that his termination violated his equal protection rights as a disabled person under Amendment XXI of the Connecticut Constitution which states:
 "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability."
Defendant argues that in order to violate that amendment, there must have been an intent to discriminate.
The Connecticut Constitution adopted in 1965 provides for equal protection in Article First Section 1 and Section 20 the latter having been amended by amendments 5 and 21. The Connecticut Supreme Court has held that "the equal protection and due process claims of the United States and Connecticut Constitutions have the same meanings and the same limits." Brunswick Corporation v. LiquorCT Page 6715Control Commission, 184 Conn. 75, 84, Footnote 4 (1981). The14th Amendment to the United States Constitution and Article First, Sections 1 and 20 as amended as aforesaid are equal protection provisions. In the cases of Washington v. Davis, 426 U.S. 229
(1976) upholding a job-related employment test that white people passed in proportionally greater numbers than blacks; PersonnelAdministrator of Massachusetts v. Feeney, 442 U.S. 256 (1979) upholding a law giving preference to veterans and concluding that it did not purposely discriminate against women, and Hunter v.Underwood, 471 U.S. 222 (1985) striking down an Alabama constitutional provision because it was intended to disenfranchise blacks, the court held that there must be an intent to discriminate against a class of people in order to violate the equal protection clause of the United States Constitution. Further, Personnel Administrator citing Washington v. Davis held that the Fourteenth Amendment guarantees equal laws, not equal results; in effect saying that regardless of the results there must be an intent to discriminate to violate the Fourteenth Amendment.
In the case at bar, plaintiff has not shown by a preponderance of the evidence an intent by the defendant to discriminate against people with a disability, including the plaintiff.
Plaintiff further claims that under Daly v. Delponte, 225 Conn. 499,513-514 (1993) citing Horton v. Meskill, 172 Conn. 615,641-645 (1977) the equal protection provisions of the state constitution are to be interpreted differently from the equal protection provisions of the federal constitution, particularly when the distinctive language of our constitution calls for an independent construction. In Daly, the court concluded, as to amendment twenty-one" . . . that its explicit prohibition of discrimination because of physical disability defines a constitutionally protected class of persons whose rights are protected by requiring encroachment on these rights to pass a strict scrutiny test," and further stated that its ". . . conclusion is supported by the legislative history of the constitutional amendment."
This court finds that there was no action resulting in unequal treatment; that there is no evidence in the record that the plaintiff was terminated because of his disability; rather, the evidence is that he was terminated because of conduct which constitutes a felony (moral misconduct) and because his conduct "undermined his effectiveness as a teacher in the Stafford Public Schools" (July 7, 1993 letter notifying plaintiff of his CT Page 6716 termination.) The basis for these conclusions has been previously described herein. His conduct caused mistrust among some students, parents and administrators and caused the Superintendent and High School principal not to want plaintiff to return to his employment. Based upon this mistrust and the fact that neither the Superintendent nor the High School Principal wanted him to return, it is very reasonable to conclude that plaintiff's overall effectiveness as a teacher in Stafford had been undermined.
However, assuming arguendo that there was encroachment on the plaintiff's rights, the court will address the strict scrutiny test described in Daly v. Delponte. The "action can survive constitutional scrutiny only if it (1) serves a compelling state interest and (2) is narrowly tailored to serve that interest." Id., 515.
 (1) The compelling state interest is to build up and maintain an efficient school system; and to do so, the impact of a teacher's conduct on school authorities and students and the operation of the school is a significant consideration. See Rado at page 554.
 (2) The action was narrowly tailored to serve that interest. The defendant's conclusion that plaintiff's conduct had undermined his effectiveness as a teacher in the Stafford Public Schools is supported by the Findings of Fact. The defendant believed, contrary to the recommendations of the Panel by which it was not bound, that the only way to serve the compelling state interest was to terminate the plaintiff's employment.[3] This court cannot find such a decision unreasonable in light of all the circumstances. Plaintiff claims that his drug dependency and rehabilitation made him even more qualified to teach the students about the danger of drugs and that he should have been retained for that reason. However, there is no evidence that his alleged inability to give drug counselling and/or advice was the reason for his termination. Rather, it was the notoriety and lack of trust resulting from his arrest and the circumstances of it that the defendant concluded undermined his overall effectiveness as a teacher and guidance counsellor. His effectiveness was not limited to his ability to be a drug counselor. That was not his sole responsibility. Even if the defendant believed plaintiff had been rehabilitated, the defendant still believed that his CT Page 6717 overall effectiveness had been undermined to the extent that termination was the only means to fulfill the aforementioned compelling state interest. The record clearly supports these conclusions, and are reasonable conclusions based upon the whole record.
Accordingly, the court finds that the two requirements to survive strict constitutional scrutiny have been fulfilled.
Finally, plaintiff, at oral argument, submitted the case ofTeahan v. Metro-North Commuter R. Co., 951 F.2d 511 (2nd Cir. 1991) for the proposition that the plaintiff's condition at the time of termination must be the basis for the defendant's action, not his condition at the time of the Panel's hearings or prior thereto. However, this case is clearly in reference to the Rehabilitation Act of 1973, an analysis of a federal statute the compliance with which has been left to another forum. It is not a constitutional argument. In addition, the defendant's decision was not based upon a disability on July 6, 1993 but on the effect of his conduct in undermining his effectiveness as a teacher in the Stafford School system. There is no evidence that such lack of effectiveness had changed from the hearing dates and prior thereto notwithstanding his efforts at rehabilitation. As a matter of fact, the defendant was aware of rehabilitation efforts based upon Findings in paragraphs 30 through 35. There is no indication that plaintiff tried to introduce additional evidence as to plaintiff's status either before or after the June 17, 1993 report of the Hearing Panel. The decision of the defendant was made on July 6, 1993 approximately three weeks after the report was issued. The defendant had a right to rely upon the Findings of Fact in the report and, in fact, was bound by the Findings of Fact.
For the foregoing reasons, the plaintiff's rights under Amendment Twenty-one of the Connecticut Constitution were not violated nor were his rights under General Statutes § 10-151
violated. The decision of the defendant was not arbitrary, illegal, capricious or erroneous in view of the reliable, probative and substantial evidence on the whole record.
Accordingly, the appeal is dismissed.
Rittenband, J.