## STATE OF CONNECTICUT *v.* DIEGO VAS
### (15782)

Foti, Heiman and Hennessy, Js.

Argued October 29, 1996—officially released January 7, 1997

*Neal Cone*, assistant public defender, for the appellant (defendant).

*Mary H. Lesser*, assistant state's attorney, with whom, on the brief, was *Mark Solak*, state's attorney, for the appellee (state).

HENNESSY, J. The defendant, Diego Vas, appeals[1] from the judgment of conviction, rendered after a jury

---

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4023, the Supreme Court transferred the appeal to this court.

trial, of one count of murder in violation of General Statutes § 53a-54a and two counts of attempted murder in violation of General Statutes §§ 53a-49 and 53a-54a. On appeal, the defendant claims that the trial court improperly (1) instructed the jury on the relationship between the evidence presented on the affirmative defense of mental disease or defect and the element of an intent to kill, (2) instructed the jury on extreme emotional disturbance, (3) denied the defendant's motion for mistrial, and (4) accepted unclear verdicts.[2] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant and Joann Daigle-Moylan were the unmarried parents of a six year old child, Ayla. Ayla resided with Daigle-Moylan, and the defendant had supervised parenting time with Ayla at the child protection council (CPC) offices in Danielson. On November 2, 1992, Daigle-Moylan brought Ayla to the CPC offices for parenting time with the defendant, supervised by CPC worker, Joyce Lannan. During the session, the defendant became visibly upset and accused the child of not telling him of Daigle-Moylan's impending marriage. Daigle-Moylan returned to the CPC offices to pick up Ayla and an argument ensued between Daigle-Moylan and the defendant. The session ended, and, as Lannan, Daigle-Moylan and Ayla walked toward the back door, the defendant pointed a gun at them. Daigle-Moylan barricaded herself in an office. Lannan initially approached the defendant to take the gun away, but then changed her mind and turned away from him. As she turned, the defendant fired several shots and ran from the building. After the defendant left the building, Daigle-Moylan came out of the office to find that Lannan and Ayla had been shot. Lannan was severely wounded but recovered from her wounds. Ayla died as a result

---

[2] This issue was withdrawn at oral argument.

of wounds to the head. The defendant was arrested in New York City the next day.

I

The defendant first claims that the trial court's instructions to the jury on the relationship between the evidence presented on the affirmative defense of mental disease or defect and the element of intent to kill were inadequate and misleading.

The defendant is charged with a violation of General Statutes § 53a-54a, which provides in pertinent part: "(a) A person is guilty of murder when, with *intent* to cause the death of another person, he causes the death of such person or of a third person . . . ." (Emphasis added.) Subsection (b) of § 53a-54a provides: "Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality[3] is admissible, in a prosecution under subsection (a) of this section, on the question of whether the defendant acted with *intent* to cause the death of another person." (Emphasis added.) In other words, because intent is an element of the offense of murder and if evidence is introduced that the defendant suffered from a mental disease, mental defect, or other mental abnormality, that evidence must be considered by the fact finder in determining whether the state has proven beyond a reasonable doubt that the defendant had the requisite intent to commit murder.

General Statutes § 53a-13 (a) provides: "In any prosecution for an offense, it shall be an affirmative defense that the defendant, at the time he committed the proscribed act or acts, lacked substantial capacity, as a result of mental disease or defect, either to appreciate the wrongfulness of his conduct or to control his con-

---

[3] The trial court instructed the jury as follows: "The terms mental disease or defect do not include an abnormality manifested only by repeated or otherwise antisocial conduct."

duct within the requirements of the law." This affirmative defense statute differs from § 53a-54a (b) in that it "shifts to the defendant the burden of establishing his or her mental status only with respect to the affirmative defense of insanity.[4] The statute does not purport to relieve the state of its continuing burden of proof with respect to mental status when mental status is implicated in the state's proof of an element of the crime, such as the defendant's specific intent to commit the crime with which he or she is charged." *State* v. *Joyner*, 225 Conn. 450, 461, 625 A.2d 791 (1993).

The defendant avers that the evidence adduced on the affirmative defense of mental disease or defect related to the question of whether the defendant knew he was killing or trying to kill another person and this evidence pertained to the question of intent. He claims that the court did not clearly instruct the jury that the evidence introduced in connection with the affirmative defense should be used to determine whether the state has proven beyond a reasonable doubt that the defendant possessed the requisite intent to commit murder under § 53a-54a. The defendant maintains that this failure specifically to instruct the jury is a violation of his due process rights. The defendant also contends that the court's instructions led the jury to believe that it should not consider the evidence concerning his affirmative defense in determining whether the state had proven beyond a reasonable doubt that he had the specific intent to commit murder. Furthermore, he argues that the court's other instructions resulted in shifting the burden of proof to require him to negate the evidence of an intent to commit murder.

---

[4] The trial court instructed the jury as follows: "In this case, evidence has been introduced bearing on the issue of whether the defendant is entitled to the affirmative defense of mental disease or defect. Our law does not use the colloquial term insanity. That term which you may have heard in popular use is not the proper term and I request that you put it and any connotations it may carry with it out of your mind."

Because these issues were not preserved in the trial court, the defendant seeks to prevail under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[5] or, in the alternative, under the plain error doctrine. See Practice Book § 4061 (formerly § 4185). The defendant cannot prevail under either argument. First, plain error review is inappropriate because the claimed error is not so obvious "that it affects the fairness and integrity of and public confidence in the judicial proceedings." *State* v. *Hinckley*, 198 Conn. 77, 87–88, 502 A.2d 388 (1985); see also *State* v. *Jeffrey*, 220 Conn. 698, 710–11, 601 A.2d 993 (1991), cert. denied, 505 U.S. 1224, 112 S. Ct. 3041, 120 L. Ed. 2d 909 (1992). Second, the defendant's claim fails to satisfy the third prong of *Golding*. The third prong of *Golding* requires the defendant to demonstrate that the alleged constitutional violation clearly exists and clearly deprived him of a fair trial. *State* v. *Golding*, supra, 239–40. The defendant has failed to demonstrate that the trial court's instructions were improper. We conclude, therefore, that the defendant's constitutional right to due process was not violated.

On the element of specific intent, the court instructed the jury: "In the crime of murder, the state must prove beyond a reasonable doubt that the defendant in causing the death of the victim, did so with the specific intent to cause death." The court told the jury to consider all the facts and circumstances in evidence in order to determine what the defendant's intentions were. In its instruction to the jury that evidence of the defendant's previous bad acts was not to be used to determine guilt, the court explained that the evidence was offered because several expert witnesses had used it in giving

[5] "The first two conditions [of *Golding*] are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself." *State* v. *Graham*, 33 Conn. App. 432, 442, 636 A.2d 852, cert. denied, 229 Conn. 906, 640 A.2d 117 (1994).

their opinions as to the defendant's state of mind. The court stated: "You should consider this evidence when you decide whether the state has proven the mental state required for murder, criminal attempt to commit murder, or the lesser included offenses beyond a reasonable doubt. *And also, you may consider it when you decide whether the defenses of mental disease or defect and [extreme emotional disturbance] have been proven by a preponderance of the evidence.*" (Emphasis added.)

As to the affirmative defense of mental disease or defect, the court instructed the jury: "If, considering all of the evidence including the defense evidence, you find that the state has proven all of the elements of the crimes charged, your task will not be over. You must then go on to decide whether the defendant is entitled under the evidence and the rules of law, which I will define for you, to the affirmative defense of mental disease or defect. If you find that the state has not proven all of the elements of the crime charged, you need not consider this affirmative defense and your verdicts will be not guilty . . . ."

"A defendant is entitled to have the jury adequately and correctly instructed. *State* v. *Hines*, 187 Conn. 199, [206] 445 A.2d 314 (1982). The trial court's jury instructions must therefore be clear, accurate, complete and comprehensible. *State* v. *Kurvin*, [186 Conn. 555, 561, 442 A.2d 1327 (1982)]. We do not, however, view instructions in artificial isolation from the overall charge. *State* v. *Reddick*, 197 Conn. 115, 132, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986). In reviewing the charge as a whole, the instructions 'need not be perfect, as long as they are legally correct, adapted to the issues and sufficient for the jury's guidance.' *State* v. *Parent*, 8 Conn. App. 469, 476, 513 A.2d 725 (1986). The test to be applied to any part of a charge is whether the charge, considered in

its entirety, presents the case to the jury so that no injustice will result. *State* v. *Mullings,* 166 Conn. 268, 275, 348 A.2d 645 (1974); *State* v. *Parent,* supra [476]. In applying this test, the substance rather than the form of what is said is considered. *State* v. *Kurvin,* supra, 565." *State* v. *Thurman,* 10 Conn. App. 302, 324, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987).

We conclude that the charge given by the trial court was legally correct and sufficient in presenting the case to the jury. The jury was repeatedly instructed on the requirements of finding specific intent as an element of the crime and that the state had the burden of proving that element beyond a reasonable doubt. The jury was instructed to consider all of the evidence presented in the case, which included several expert witnesses who testified as to their opinion of the defendant's state of mind at the time of the shooting. The instructions, viewed in their entirety, gave the jury the proper guidance required under the law.

The defendant further claims that the instructions invited the jury to believe that, by raising the affirmative defense of lack of substantial capacity and extreme emotional disturbance, the defendant had assumed an exception to the general rule that the state had the burden of proving each element of the offense beyond a reasonable doubt. Referring to the statutory basis for the defendant's affirmative defense, the trial court charged: "As I told you before, generally, in a criminal case, the burden of proof is on the state to prove the defendant guilty beyond a reasonable doubt. This statute involves, however, an exception to that general rule, because the statute involves what is known as an affirmative defense. The burden of proof on this issue is on the defendant." The defendant contends that the court's instruction could have led the jury to believe that the state's burden to prove the defendant guilty beyond a reasonable doubt was qualified by the "exception to that

general rule" when the affirmative defense of mental disease or defect had been raised. Furthermore, the defendant contends that if the jury is told that the prosecution has the burden of proving all the elements of a crime, but then is also instructed that the defendant has the burden of disproving one of those same elements, there is a danger that the jurors will resolve the inconsistency in a way that lessens the presumption of innocence.

We conclude that the court adequately instructed the jury that the state had the burden of proving all of the elements of the offense beyond a reasonable doubt. The court charged: "It is not necessary for the state to prove that the defendant is not entitled to the affirmative defense. It is necessary for the defendant to prove he is entitled to the affirmative defense. The defendant's burden of proof on this issue, however, is different from and less than the state's burden of proof on the elements of the crime charged. The defendant does not have to establish this affirmative defense beyond a reasonable doubt. His burden of proof on this affirmative defense is by the standard known as a preponderance of the evidence. This is a lesser or a less demanding burden of proof than the state's burden of proof of beyond a reasonable doubt." The distinction between the elements of the offense and the use of the affirmative defenses, including who had the burden of proof and the standard of proof required, was clearly explained to the jury. Furthermore, the court's use of the word "generally" in the instruction, when viewed in its context and as part of the instruction in its entirety, did not result in lessening the presumption of the defendant's innocence.

II

The defendant next claims that the instruction given the jury on extreme emotional disturbance was

improper. The defendant properly preserved this claim by filing an exception to the instruction before and after the trial court had charged the jury.

The court instructed the jury as follows: "There are three elements to this affirmative defense. One, the defendant's emotional disturbance was not a mental disease or defect that rises to the level of the affirmative defense of mental disease or defect as that has been defined to you. Two, the defendant was exposed to an extremely unusual and overwhelming state that is more than mere annoyance or unhappiness and three, the defendant had an extreme emotional reaction to that state as a result of which there was a loss of self-control and his reason was overborne by intense feelings such as passion, anger, distress, grief, excessive agitation or other similar emotions. . . . As used in this affirmative defense, the word extreme means the greatest degree of intensity away from the norm, away from the normal or usual state for the defendant."

The defendant contends that the use of the words "the greatest degree of intensity away from the norm" requires a finding of a state of mind more characteristic of a mental illness. The instructions to the jury on the affirmative defense of extreme emotional disturbance given in this case are the same as those approved in *State* v. *Elliott*, 177 Conn. 1, 10, 411 A.2d 3 (1979), in which our Supreme Court stated that "[i]n its charge, the trial court should explain that the term 'extreme' refers to the greatest degree of intensity away from the norm for that individual." The defendant requests that we find that the *Elliott* formulation is misleading. It is not, however, within our province to overrule or discard the decisions of our Supreme Court. *State* v. *Reis*, 33 Conn. App. 521, 527, 636 A.2d 872, cert. denied, 229 Conn. 901, 640 A.2d 118 (1994). We therefore conclude, on the basis of Supreme Court precedent, that the instruction was proper.

## III

The defendant next claims that the trial court improperly failed to declare a mistrial after the state asked a witness whether he knew that Ayla had had dreams of the defendant killing her.

The facts relevant to this issue are as follows. At trial, Thomas Juko testified of the defendant's loving relationship with Ayla, describing how he had regularly observed the defendant and Ayla interacting at an eating establishment that he frequented. The state's attorney then asked Juko, "were you aware that the child—near the time of her death—was dreaming that her father was killing her?" The court sustained the defendant's objection and instructed the jury to disregard the answer and question. The defendant moved for a mistrial the next day before the trial proceeded.

"[A] mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial . . . and the whole proceedings are vitiated. . . . On appeal, the defendant bears the burden of establishing that the occurrence was so prejudicial, in the context of the trial as a whole, that it denied him a fair trial. . . . The decision to grant or deny a motion for a mistrial is within the sound discretion of the trial court. . . . *State* v. *Traficonda*, 223 Conn. 273, 282, 612 A.2d 45 (1992). The trial court also has broad discretion in determining whether the defendant was prejudiced. See *Speed* v. *DeLibero*, 215 Conn. 308, 315, 575 A.2d 1021 (1990); *State* v. *Leonard*, 31 Conn. App. 178, 195, 623 A.2d 1052, cert. granted, 226 Conn. 912, 628 A.2d 985 (1993)." (Internal quotation marks omitted.) *State* v. *Pettway*, 39 Conn. App. 63, 72–73, 664 A.2d 1125, cert. denied, 235 Conn. 921, 665 A.2d 908 (1995).

We conclude that the trial court correctly denied the defendant's motion for a mistrial. The court told the jury to disregard the question and the answer not only at the time it was initially introduced but also in its charge to the jury at the end of the trial. The court instructed the jury that it was confined to a consideration of the evidence in the case, not to evidence that was stricken. The court also reminded the jury that questions are not evidence. Moreover, we presume, absent a fair indication to the contrary, that the jury followed the instruction of the court as to the law. *State* v. *Just*, 185 Conn. 339, 357, 441 A.2d 98 (1981). The defendant has failed to show that the state's question to Juko was so prejudicial that it deprived him of a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.