STATE OF CONNECTICUT *v.* MATTHEW ROBINSON
(AC 19242)

Lavery, Schaller and Daly, Js.

Argued December 2, 1999—officially released March 7, 2000

*Lauren Weisfeld*, assistant public defender, for the appellant (defendant).

*Frederick W. Fawcett*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, J. The defendant, Matthew Robinson, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a (a), claiming that the trial court improperly (1) admitted an out-of-court statement of a witness, (2) instructed the jury on consciousness of guilt relative to the defendant's conduct subsequent to the crime and (3) instructed the jury on the presumption of innocence and the reasonable doubt standard. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts, which are relevant to this appeal. On May 19, 1997, at approximately 3 p.m., the defendant and the victim, Raymond Felix, were seen arguing outside the P.T. Barnum apartment complex in Bridgeport. During

this argument, the defendant asked the victim, referring to a prior altercation, why the victim had shot him. The victim responded that he had shot the defendant because he thought the defendant was a "punk." The argument escalated and the defendant fired two shots at the victim. One bullet grazed the back of the victim's head and the second penetrated his chest and lung. The victim died from internal bleeding.

After the shooting, the defendant fled in one direction while others at the scene ran in another. The defendant stated just minutes after the shooting, "I got that motherfucker now. He shot me; I shot his ass back." The defendant was arrested on June 3, 1997.

I

The defendant claims that the court improperly admitted into evidence for substantive purposes a statement made by a witness, Deron Green, to Detective Robert Martin at the state police barracks in Bridgeport on May 29, 1997. We disagree.

The following additional facts are relevant to this issue. Green was arrested on May 29, 1997, on unrelated charges. While at the state police barracks, he spoke with Martin regarding the shooting. Green told Martin the following, which is contained in a signed and sworn statement he gave to Martin:[1] Green saw the defendant

---

[1] Green's signed and sworn statement to Martin states in relevant part:

"[Detective Robert Martin]: What do you want to tell me?

"[Deron Green]: First, I had seen [the defendant] throughout the whole day. He was standing with us, talking with somebody else, and he was asking him how he was since he got shot [by the victim]. They asked [the defendant] what he was going to do, like if he was going to get him back, and he said, 'Yay.' Dino walked up to [the defendant] and said that he heard that [the defendant] was going to shoot them, and [the defendant] said that he never said that. You did what you had to do and it was over. [The defendant] said he didn't want any problems. Then Dino walked away. Then after that, about two minutes later, [the victim] drove by in the car with somebody, and [the victim] pointed at [the defendant] and started laughing. [The defendant] was asking around if anyone had a gun, and everyone said no. When everyone said no, [the defendant] jumped in his car and said he would be right back.

during the entire day of the shooting. Green asked the defendant if he was going to do anything in response to the victim's having previously shot the defendant. The defendant initially "didn't want any problems" with the victim. The victim then drove by, pointed at the defendant and laughed at him. The defendant left in a car and returned with a weapon. The defendant then found and shot the victim once in the face and then a second time when the victim was on the ground.

When Green was called to testify at trial, he was shown the statement he had made to police. Green testified that although he recognized the signature on it as being his, he did not remember making the statement because he was high on marijuana at the time. Showing the statement to Green did not refresh his recollection.[2]

"Then he left and came back like ten minutes later. He had two other guys with him. They got out of the car. They all had guns, and [the defendant] told them that they only needed one gun because when they got out of the car they were all cocking [their guns]. They put the guns back. They walk around, I think, building 15 or 16. [The defendant] walks around the building and sees [the victim]. [The victim] said, 'What's up?' [The victim] told [the defendant] that he wasn't going to do shit and that he was a punk. Then [the defendant] got like all pumped up and pulled the gun out and shot him in the face.

"Q. Then what?

"A. [The victim] tried to run. He took like two steps and then he fell. Then [the defendant] shot him again while he was on the ground.

"Q. Then what?

"A. [The defendant] and the other two kids ran back to the front of the building, and they jumped in the car and left.

"Q. What kind of car did they leave in?

"A. Brownish, goldish, four-door Mazda, I think a 323 or something. It was smaller.

"Q. Where were you when you observed these things?

"A. I was standing right there.

\* \* \*

"Q. Do you know why [the defendant] shot [the victim]?

"A. Because he shot [the defendant] like a week or two before that . . . ."

[2] Green also was shown a photographic array with one face circled. Green recalled some of the discussion he had with Martin regarding the photographic array, but he did not remember circling any one of the faces offered.

The statement was admitted into evidence over an objection by the defendant.

The issue of whether admission of the statement was proper revolves around *State* v. *Whelan*, 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).[3] "In *Whelan*, we adopted the rule allowing the substantive use of a prior inconsistent statement if: (1) the statement is in writing; (2) it is signed by the declarant; (3) the declarant has personal knowledge of the facts set forth in the statement; and (4) the declarant testifies at trial and is subject to cross-examination." *State* v. *Hopkins*, 222 Conn. 117, 123, 609 A.2d 236 (1992). A *Whelan* claim is evidentiary in nature and, accordingly, "the defendant 'bears the burden of establishing that the trial court's erroneous ruling was harmful to him in that it probably affected the outcome of the trial.'" *State* v. *Paulino*, 223 Conn. 461, 478, 613 A.2d 720 (1992). "The admissibility of evidence, including the admissibility of a prior inconsistent statement pursuant to *Whelan*, is a matter within the wide discretion of the trial court. . . . On appeal, the exercise of that discretion will not be disturbed except on a showing that it has been abused." (Citation omitted.) *State* v. *Newsome*, 238 Conn. 588, 596, 682 A.2d 972 (1996).

---

[3] The defendant invites us to examine this issue as a constitutional question, claiming that admission of the statement unduly restricts the defendant's right of confrontation under the Connecticut and United States constitutions. We decline to do so. "Every evidentiary ruling which denies a defendant a line of inquiry to which he thinks he is entitled is not constitutional error." (Internal quotation marks omitted.) *State* v. *Moye*, 214 Conn. 89, 95, 570 A.2d 209 (1990). Simply put, the defendant "has put a constitutional tag on a nonconstitutional evidentiary ruling." (Internal quotation marks omitted.) *State* v. *Vilalastra*, 207 Conn. 35, 46, 540 A.2d 42 (1988). "[I]t would trivialize the constitution to transmute a nonconstitutional claim into a constitutional claim simply because of the label placed on it by a party or because of a strained connection between it and a fundamental constitutional right." (Internal quotation marks omitted.) *State* v. *Dash*, 242 Conn. 143, 152, 698 A.2d 297 (1997).

The defendant challenges the admission of the statement under the fourth prong of *Whelan* and contends that Green was not sufficiently subject to cross-examination to meet *Whelan*'s requirements. The United States Supreme Court's discussion of the phrase "subject to cross-examination" in rule 801 (d) (1) of the Federal Rules of Evidence[4] proves instructive. See generally *George* v. *Ericson*, 250 Conn. 312, 333–34, 736 A.2d 889 (1999) (*McDonald, J.*, concurring) (noting "profound effect" of Federal Rules of Evidence on Connecticut's law of evidence). "Ordinarily a witness is regarded as 'subject to cross-examination' when he is placed on the stand, under oath, and responds willingly to questions. Just as with the constitutional prohibition, limitations on the scope of examination by the trial court or assertions of privilege by the witness may undermine the process to such a degree that meaningful cross-examination within the intent of the Rule no longer exists. But that effect is not produced by the witness' assertion of memory loss—which, as discussed earlier, is often the very result sought to be produced by cross-examination, and can be effective in destroying the force of the prior statement." *United States* v. *Owens*, 484 U.S. 554, 561–62, 108 S. Ct. 838, 98 L. Ed. 2d 951 (1988).

The defense had a sufficient opportunity to test the witness' claim regarding his loss of memory and also was afforded a sufficient opportunity to attack his credi-

---

[4] Rule 801 (d) of the Federal Rules of Evidence provides in relevant part: "Statements which are not hearsay. A statement is not hearsay if—

"(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving the person . . . ."

bility. The defense asked Green about his numerous prior felony convictions. The defense asked whether cases still were pending against Green when he made the statement to Martin. The defense asked whether Green's statement was motivated by a desire to "cut a deal" regarding the pending criminal matters against him if he provided useful information. The court did not impose any limitations on the defense in these inquiries.

Furthermore, Green's forgetful testimony was placed within a context in which the jury could assess its credibility. Other witnesses testified that they saw Green at the scene of the crime. Martin testified that Green made the statement and exhibited no characteristics of being under the influence of drugs at the time. The jury heard sufficient testimony from which it could determine whether Green's statements or testimony were worthy of credence. Accordingly, the assessment of Green's credibility against the testimony of other witnesses to determine his veracity was customary grist for the jury mill and he was sufficiently subjected to cross-examination. See *State* v. *Whelan*, supra, 200 Conn. 750. The defense is guaranteed "only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (Internal quotation marks omitted.) *State* v. *Menzies*, 26 Conn. App. 674, 685, 603 A.2d 419, cert. denied, 221 Conn. 924, 608 A.2d 690 (1992).

In sum, the defendant on cross-examination "took full advantage of the opportunity afforded him to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." (Internal quotation marks omitted.) *State* v. *Pittman*, 209 Conn. 596, 603, 553 A.2d 155 (1989). The record supports our conclusion that Green was sufficiently subject to cross-examination and that the fundamental purposes of

cross-examination were met. See *State* v. *Outlaw*, 216 Conn. 492, 506, 582 A.2d 751 (1990). Accordingly, the dictates of *Whelan* were fulfilled, and the court did not abuse its discretion in admitting Green's statement for substantive purposes.

## II

The defendant next contends that the court improperly instructed the jury regarding his conduct subsequent to the crime as tending to prove consciousness of guilt. We disagree.

The defendant concedes in his brief that our Supreme Court previously has upheld similar consciousness of guilt instructions, yet asks us not to follow them. "It is not, however, within our province to overrule or discard the decisions of our Supreme Court." *State* v. *Vas*, 44 Conn. App. 70, 78, 687 A.2d 1295, cert. denied, 240 Conn. 910, 689 A.2d 474 (1997). Furthermore, the use of a consciousness of guilt instruction regarding flight from the scene of the crime is well established. "Flight, when unexplained, tends to prove a consciousness of guilt. . . . Flight is a form of circumstantial evidence. Generally speaking, all that is required is that the evidence have relevance, and the fact that ambiguities or explanations may exist which tend to rebut an inference of guilt does not render evidence of flight inadmissible but simply constitutes a factor for the jury's consideration. . . . The probative value of evidence of flight depends upon all the facts and circumstances and is a question of fact for the jury." (Citations omitted; internal quotation marks omitted.) *State* v. *Holloway*, 209 Conn. 636, 651–52, 553 A.2d 166, cert. denied, 490 U.S. 1071, 109 S. Ct. 2078, 104 L. Ed. 2d 643 (1989). " 'The fact that the evidence might support an innocent explanation as well as an inference of a consciousness of guilt does not make an instruction on flight erroneous.' *State* v. *Wright*, 198 Conn. 273, 281, 502 A.2d 911 (1986)."

*State* v. *Freeney*, 228 Conn. 582, 594, 637 A.2d 1088 (1994).

The defendant's additional claim that the court's flight instruction was insufficiently evenhanded also holds no merit.[5] The challenged instruction contains no stamp of approval on the state's version of events. The court discussed the defendant's proffered reasons for leaving the area and noted that evidence of flight does not need to carry any inference of guilt. This discussion was more than was necessary, as our Supreme Court has rejected claims that a court has even a threshold responsibility to instruct the jury that flight evidence may have an innocent explanation. See, e.g., id., 593–94. A flight instruction does not need to include "all the possible innocent explanations for [the defendant's] flight." *State* v. *Wright*, supra, 198 Conn. 280. The court discussed the defense theories regarding the defen-

---

[5] The trial court instructed the jury in relevant part: "I'm going to give you a brief instruction on a concept that we call in law consciousness of guilt. Whenever a person is on trial for a criminal offense it's proper to show the person's conduct subsequent to the alleged criminal offense, which may have been influenced by that act. [The] state here claims evidence of flight and further claims that the defendant left the area for a period of time after the alleged crime in this particular case. Such conduct, when unexplained, tends to prove consciousness of guilt. The flight of a person accused of a crime is a circumstance which, when considered together with all of the facts of the case, may justify a finding of the defendant's guilt. However, flight, if shown, is not conclusive. It does not raise a presumption of guilt. It is to be given the weight to which you, the jury, think it is entitled, to under the circumstances. Here, there was evidence produced by state's witnesses that the defendant fled from the scene of the alleged crime. There also was evidence that he absented himself from the Bridgeport area and stayed in homes of his friends and his sister in the Waterbury area. He, of course, testified that he was not at the scene at all and that he was not immediately aware of the warrant for his arrest, that he . . . often visited his family in Waterbury, that he was there for enjoyment and not for evasive reasons. . . . So, if you find that he was in fact fleeing the scene of the crime, that he was subsequently secreting himself for the purpose of avoiding apprehension, you may consider it as evidence of his consciousness of guilt. It is, of course, up to you to give the evidence the weight which you think it's entitled, if any."

dant's departure from the area and, thus, instructed more favorably to the defense than was necessary regarding flight. Therefore, the flight instruction was not unbalanced or improper and did not constitute an abuse of discretion by the court.

### III

### A

The defendant also asserts that the court misled the jury on the law of reasonable doubt. He challenges the court's instruction that a reasonable doubt is "such a doubt as in the serious affairs that concern you, you would pay heed. That is, such a doubt as would cause reasonable men and women to hesitate to act upon it in matters of importance." We disagree. Since the defendant did not preserve this issue at trial, review is limited to the precepts articulated in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[6]

The defendant concedes in his brief that challenges to similar instructions have been rejected by this court and our Supreme Court, and on this point we do agree with the defendant. See, e.g., *State* v. *Kelley*, 229 Conn. 557, 567–68, 643 A.2d 854 (1994); *State* v. *Gomez*, 225 Conn. 347, 353–54, 622 A.2d 1014 (1993); *State* v. *Smith*, 210 Conn. 132, 147–50, 554 A.2d 713 (1989). Despite the weighty authority that the defendant states is against him, he asks us to ignore this Supreme Court precedent

---

[6] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." *State* v. *Golding*, supra, 213 Conn. 239–40.

and hold that these instructions are impermissible.[7] As we noted in part II of this opinion, this court cannot overrule or discard the decisions of our Supreme Court. *State* v. *Vas*, supra, 44 Conn. App. 78. Accordingly, we are bound to follow the decisions upholding these well-settled instructions regarding the concept of reasonable doubt.

## B

The defendant challenges the court's instruction to the jury that the presumption of innocence and reasonable doubt exist to protect the innocent and not the guilty.[8] Like the defendant's prior argument, the defendant's assertion faces a wall of recent Supreme Court decisions rejecting challenges to very similar instructions. See, e.g., *State* v. *Watson*, 251 Conn. 220, 227–28, 740 A.2d 832 (1999); *State* v. *Schiappa*, 248 Conn. 132, 167–77, 728 A.2d 466, cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999). Although the defendant

[7] Alternatively, the defendant urges us to exercise our supervisory powers to bar consciousness of guilt instructions. "Our supervisory powers are not a last bastion of hope for every untenable appeal. They are an *extraordinary* remedy to be invoked only when circumstances are such that the issue at hand, while not rising to the level of a constitutional violation, is nonetheless of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole." (Emphasis in original; internal quotation marks omitted.) *State* v. *Hines*, 243 Conn. 796, 815, 709 A.2d 522 (1998); see *State* v. *Portee*, 55 Conn. App. 544, 569–70, 740 A.2d 868 (1999), cert. denied, 252 Conn. 920, 744 A.2d 439 (2000). Since the issues here do not rise to the extraordinary status described previously, we do not consider this an appropriate case in which to exercise our supervisory powers.

[8] The court instructed the jury in relevant part: "It's the sworn duty of the court and the jurors to safeguard the rights of persons charged with crimes by respecting the presumption of innocence, which the law imputes to every person so charged by making the state meet its burden of proof of guilt beyond a reasonable doubt. You must keep in mind that this rule of law is made to protect the innocent and not the guilty and if the presumption of innocence has been overcome by evidence proving beyond a reasonable doubt that the accused is guilty of the crime charged, then it's the sworn duty of the jury to enforce the law and to render a verdict of guilty."

presents a litany of cases that disagree with this view; e.g., *United States* v. *Doyle*, 130 F.3d 523, 538 (2d Cir. 1997); it is the decisions of our Supreme Court that we must follow in this matter. See *State* v. *Vas*, supra, 44 Conn. App. 78.

The judgment is affirmed.

In this opinion the other judges concurred.