## CAROLYN HANES *v.* BOARD OF EDUCATION OF THE CITY OF BRIDGEPORT
### (AC 19838)

Spear, Mihalakos and Zarella, Js.

Argued December 1, 2000—officially released August 28, 2001

*William M. Laviano*, for the appellant (plaintiff).

*Carolyn R. Linsey*, for the appellee (defendant).

*Opinion*

MIHALAKOS, J. The plaintiff, Carolyn Hanes, appeals from the judgment of the trial court dismissing her administrative appeal from the decision of the defendant board of education of the city of Bridgeport (board). At issue is the board's decision to terminate her contract of employment. On appeal, the plaintiff claims, inter alia, that the court (1) divested itself of subject matter jurisdiction when it did not permit her to introduce evidence that had not been presented to the board and the hearing panel, and (2) incorrectly concluded that the evidence was sufficient to support the board's decision. We affirm the judgment of the trial court.

The relevant facts as found by the board's hearing panel are as follows.[1] From 1970 to the time of her dismissal in 1994, the plaintiff was employed as a teacher in the Bridgeport public school system. For the last six years of her employment, the plaintiff, who had earned tenure, was assigned to Thomas Hooker School. While there, the plaintiff was responsible for administering to eighth graders the reading and language arts sections of the Connecticut Mastery Test (mastery test), a statutorily mandated statewide examination given to public school students in grades four, six and eight that

---

[1] General Statutes § 10-151 (d) provides in relevant part: "A board of education may designate a subcommittee of three or more board members to conduct hearings and submit written findings and recommendations to the board for final disposition in the case of teachers whose contracts are terminated. . . ."

is used to measure achievement in reading, language arts and mathematics.

In 1992 and 1993, only the plaintiff taught seventh grade spelling and vocabulary at Thomas Hooker School. She also taught seventh grade language arts classes that were specifically designed to enhance student scores on a section of the mastery test titled "Degrees of Reading Power" (DRP), which was used to measure the depth of a student's vocabulary and ability to spell. In 1993, the plaintiff actively began pursuing promotions to administrative positions, including principal. She did not want to "stagnate" in a teaching position.

In the fall of 1993, the plaintiff administered the DRP section of the mastery test. After collecting the answer pamphlets from the students, the plaintiff filled in answers to questions that had been left blank and changed answers that she believed were incorrect. She then submitted the answer pamphlets for grading.

The results of the 1993 mastery test indicated that 96 percent of the plaintiff's students exceeded the goal for achievement on the DRP section. That percentage was the highest in the state. Consequently, 96 percent of the plaintiff's students were placed in advanced English classes when they entered high school the following year. The apparent achievement of the plaintiff's students enhanced the plaintiff's professional reputation.

In the fall of 1994, the plaintiff's former students were retested by the administration. Only 15 percent of them exceeded the goal for achievement on the DRP section. Thus, 81 percent of the plaintiff's students had been placed inappropriately in advanced English classes when they entered high school. The 1994 results indicated that many of those students required remedial education in reading. An investigation into the disparity between the results of the 1993 and 1994 DRP sections

revealed that the plaintiff had altered the answer pamphlets.

In its written decision, the board's hearing panel found that as a result of the plaintiff's tampering, (1) many students in her 1993 eighth grade class were deprived of "remedial reading assistance or appropriate placement in high school," (2) "[p]arents received grossly distorted feedback regarding their child's level of achievement," (3) "[t]he school's eligibility for state grant moneys for remedial programs was negatively impacted by artificially inflated scores," and (4) false results were submitted "to a statewide, statutorily mandated program designed to accurately evaluate students' educational progress and to measure the effectiveness of schools and school districts."

The hearing panel recommended that the board terminate the plaintiff's employment. The panel concluded that two independent grounds supported its recommendation: (1) the plaintiff had "engaged in moral misconduct"; and (2) "other due and sufficient cause exists to terminate [the plaintiff's employment contract]."

On November 20, 1995, the board adopted the hearing panel's findings of fact as well as its recommendation. Accordingly, the board terminated the plaintiff's employment contract. The plaintiff appealed to the court from the board's decision.[2] The court dismissed the plaintiff's appeal, and this appeal followed.[3]

---

[2] General Statutes § 10-151 (e) provides in relevant part: "Any teacher aggrieved by the decision of a board of education after a hearing as provided in subsection (d) of this section may appeal therefrom, within thirty days of such decision, to the superior court. . . . The court, upon such appeal, shall review the proceedings of such hearing. The court, upon such appeal and hearing thereon, may affirm or reverse the decision appealed from in accordance with subsection (j) of section 4-183. . . ."

[3] "An aggrieved party may obtain a review of any final judgment of the Superior Court under this chapter. The appeal shall be taken in accordance with section 51-197b." General Statutes § 4-184.

I

During oral argument on December 1, 2000, the plaintiff claimed that the court divested itself of subject matter jurisdiction when it did not permit her to introduce evidence that had not been presented to the board and the hearing panel. In support of her argument, which was not raised in her principal brief to this court,[4] the plaintiff claimed that the trial court applied General Statutes (Rev. to 1995) § 10-151, as amended by Public Acts 1995, No. 95-58, when, instead, it should have applied that statute as it existed prior to the amendment.[5] On December 8, 2000, we ordered each of the parties to file a supplemental brief addressing the merits of her claim. Both parties complied with our order. After considering the briefs and oral arguments of the parties, we hold that regardless of whether the court's decision to apply the amended version of § 10-151 was correct, it did not divest itself of subject matter jurisdiction.

"Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it." (Internal quotation marks omitted.) *Amodio* v. *Amodio*, 247 Conn. 724, 727, 724 A.2d 1084 (1999). "Although related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the

[4] A claim of lack of subject matter jurisdiction "cannot be waived by any party and can be raised at any stage in the proceedings." (Internal quotation marks omitted.) *State* v. *Anonymous*, 240 Conn. 708, 718, 694 A.2d 766 (1997).

[5] "By amendments enacted in 1995, the legislature . . . redesignated § 10-151 (f) as § 10-151 (e) and . . . deleted the language allowing the presentation of evidence additional to that in the transcript on appeal. See Public Acts 1995, No. 95-58." *Sekor* v. *Board of Education*, 240 Conn. 119, 130 n.9, 689 A.2d 1112 (1997).

statute." (Internal quotation marks omitted.) Id., 728. Thus, "[i]f [the court] applied any wrong rule of law to the situation, it was not acting without jurisdiction but in the erroneous exercise of its jurisdiction." *Artman* v. *Artman*, 111 Conn. 124, 130, 149 A. 246 (1930). With those principles in mind, we examine the plaintiff's claim.

The plaintiff agrees that the court initially had subject matter jurisdiction to hear her appeal. She claims, however, that the court divested itself of subject matter jurisdiction when it applied the amended version of § 10-151 and, as a result, improperly precluded her from presenting evidence beyond that in the transcript of the appeal. That argument is simply contrary to settled law. "As a general rule, jurisdiction once acquired is not lost or divested by subsequent events." (Internal quotation marks omitted.) *Loulis* v. *Parrott*, 241 Conn. 180, 198, 695 A.2d 1040 (1997). Furthermore, because "[a] court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it"; (internal quotation marks omitted) *Amodio* v. *Amodio*, supra, 247 Conn. 728; the plaintiff's jurisdictional challenge is essentially that the court divested itself of subject matter jurisdiction when it applied the wrong version of § 10-151 and, as a result, improperly precluded the plaintiff from introducing evidence beyond that in the transcript on appeal. Because, as the plaintiff agrees, the court initially had subject jurisdiction matter to hear her appeal, we conclude that the plaintiff has confused the power of the court to hear and determine her appeal with the way in which that power must be exercised. Accordingly, we conclude that the court did not divest itself of subject matter jurisdiction.

II

The plaintiff also claims that the court incorrectly concluded that the evidence was sufficient to support

the board's decision to terminate her. Specifically, the plaintiff argues that (1) the evidence was insufficient to support the hearing panel's finding that the students had not tampered with the answer pamphlets and (2) even if the evidence were sufficient to support the panel's findings, the board's decision to terminate her was unjustified. Neither of those arguments is persuasive.

"When considering termination of a tenured teacher's employment contract, a school board acts, like an administrative agency, in a quasi-judicial capacity." (Internal quotation marks omitted.) *Rogers* v. *Board of Education*, 252 Conn. 753, 760, 749 A.2d 1173 (2000). "A school board has discretion to accept or reject a recommendation from an impartial hearing panel, though it is bound by the panel's findings of fact unless unsupported by the evidence." (Internal quotation marks omitted.) Id. "The evidence to support a finding, however, must be substantial." *Barnett* v. *Board of Education*, 232 Conn. 198, 211, 654 A.2d 720 (1995).[6]

Specifically, the plaintiff challenges the following finding of the hearing panel: "Given the number of answer pamphlets which were tampered with in two successive years, it is totally implausible that such a scheme could have been accomplished by students." The plaintiff does not challenge, however, any of the

---

[6] The plaintiff seems to claim, contrary to our Supreme Court's decision in *Barnett* v. *Board of Education*, supra, 232 Conn. 198, that the substantial evidence test generally is not the proper standard to apply when reviewing findings of fact made or adopted by a board of education. It is not, however, within our province to overrule or discard the decisions of our Supreme Court. *State* v. *Robinson*, 56 Conn. App. 794, 801, 746 A.2d 210, cert. denied, 253 Conn. 904, 753 A.2d 938 (2000). The plaintiff also claims that the allegations against her involved fraud and criminal misconduct. Therefore, she asserts, the hearing panel and the board should have required that her misconduct be proven by clear and convincing evidence. The plaintiff failed to establish, however, that she raised that claim before the hearing panel and the board. Consequently, we decline to consider her claim. See *Cahill* v. *Board of Education*, 198 Conn. 229, 241–42, 502 A.2d 410 (1985).

hearing panel's other findings, which include the follow-ing: (1) "[t]he [mastery test] is a controlled test adminis-tered pursuant to guidelines designed to maintain security and integrity"; (2) "[t]eachers and administra-tors who conduct and supervise mastery testing at the school and district level are *not* provided with correct answers" (emphasis in original); (3) regarding the plain-tiff's students, their "pattern of irregular responses, including question sixty (high percentage of same incor-rect answer in 1993 and 1994) reflects that the same individual altered [their mastery test] answer pamphlets (DRP section) in 1993 and 1994"; (4) "[b]ecause an unusually high number of [the plaintiff's] students com-pleted less than fifty percent of the questions on the 1994 DRP (Form G), it is apparent that tampering was facilitated by allowing students less time than the pre-scribed seventy minutes to complete the test"; and (5) in 1993 and 1994, the plaintiff, herself, administered the DRP section of the mastery test to her students and was the timekeeper for that section. Those five findings are substantially supported by the evidence in the record, and from those findings, the hearing panel rea-sonably could have concluded that the plaintiff had tampered with the answer pamphlets.[7]

The only remaining issue before us is whether the board's decision to terminate the plaintiff was proper in view of all the facts found by the panel. See *Rado* v. *Board of Education*, 216 Conn. 541, 553, 583 A.2d 102 (1990). Of the six grounds for termination of the employment of a tenured teacher set forth in General Statutes (Rev. to 1995) § 10-151 (d),[8] the board, in dis-

---

[7] We acknowledge that, "generally, [t]here is no distinction between direct and circumstantial evidence [so] far as probative force is concerned . . . ." (Internal quotation marks omitted.) *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 345 n.14, 757 A.2d 561 (2000). "In fact, circumstantial evidence may be more certain, satisfying and persuasive than direct evi-dence." (Internal quotation marks omitted.) Id.

[8] General Statutes (Rev. to 1995) § 10-151 (d) provides in relevant part: "The contract of employment of a teacher who has attained tenure shall be

charging the plaintiff, relied on "moral misconduct" and the catchall, "other due and sufficient cause." Our analysis reveals that there was "other due and sufficient cause" to terminate the plaintiff.[9]

"The jurisdiction and discretion to determine what . . . may be [due and sufficient cause] rests in the hands of the school authorities. . . . That determination must conform, of course, to the meaning of 'other due and sufficient cause.' General Statutes § 10-151 (d). [We have] treated that phrase as equivalent to good cause, citing with evident approval a definition of that term taken from *Rinaldo* v. *School Committee of Revere*, 294 Mass. 167, 169, 1 N.E.2d 37 (1936): Good cause includes any ground which is put forward by the [school] committee in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the committee's task of building up and maintaining an efficient school system. In *Tucker* [v. *Board of Education*, 177 Conn. 572, 418 A.2d 933 (1979)], we declared that the decision to terminate must be reached after a careful examination of all pertinent factors relating to the particular situation, with due consideration of the effect the teacher's conduct will have on the school authorities

continued from school year to school year, except that it may be terminated at any time for one or more of the following reasons: (1) Inefficiency or incompetence; (2) insubordination against reasonable rules of the board of education; (3) moral misconduct; (4) disability, as shown by competent medical evidence; (5) elimination of the position to which the teacher was appointed or loss of a position to another teacher, if no other position exists to which such teacher may be appointed if qualified, provided such teacher, if qualified, shall be appointed to a position held by a teacher who has not attained tenure, and provided further that determination of the individual contract or contracts of employment to be terminated shall be made in accordance with either (A) a provision for a layoff procedure agreed upon by the board of education and the exclusive employees' representative organization or (B) in the absence of such agreement, a written policy of the board of education; or (6) other due and sufficient cause. . . ."

[9] Consequently, we need not address whether the plaintiff's actions constituted moral misconduct. See *Rado* v. *Board of Education*, supra, 216 Conn. 553–54.

as well as on the students. . . . Thus, in deciding whether particular conduct constitutes due and sufficient cause for termination, the impact of that conduct upon the operation of the school is a significant consideration." (Citations omitted; internal quotation marks omitted.) *Rogers* v. *Board of Education,* supra, 252 Conn. 769–70.

In the present case, the board adopted the hearing panel's findings. As previously indicated, the hearing panel found, inter alia, that (1) the plaintiff tampered with her student's answers to the DRP section of the mastery test and, (2) as a result, (a) many students in her 1993 eighth grade class were deprived of "remedial reading assistance or appropriate placement in high school," (b) "[p]arents received grossly distorted feedback regarding their child's level of achievement," (c) "[t]he school's eligibility for state grant moneys for remedial programs was negatively impacted by artificially inflated scores," and (d) false results were submitted "to a statewide, statutorily mandated program designed to accurately evaluate students' educational progress and to measure the effectiveness of schools and school districts." Those findings establish that the board reached its decision to terminate the plaintiff "after a careful examination of all pertinent factors relating to the . . . situation . . . ." (Internal quotation marks omitted.) Id., 769–70. They also establish that the board gave "due consideration" to the effect that the plaintiff's conduct had on Bridgeport public school administrators and the students at Thomas Hooker School. See id., 770. Furthermore, the findings indicate that the plaintiff's conduct adversely affected the operation of Thomas Hooker School. Accordingly, we conclude that there was due and sufficient cause to terminate the plaintiff's employment contract. We also conclude that the board did not arbitrarily decide to terminate the plaintiff's employment contract. It acted

reasonably and rationally, and in a manner relevant to its task of building up and maintaining an efficient school system.

The judgment is affirmed.

In this opinion the other judges concurred.