******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# APPENDIX

## MARIA MOULTHROP *v.* CONNECTICUT STATE BOARD OF EDUCATION*

Superior Court, Judicial District of New Britain
File No. CV-19-6051413-S

Memorandum filed December 18, 2019

*Proceedings*

Memorandum of decision in appeal from revocation of plaintiff's professional educator and initial educator certificates. *Appeal dismissed.*

*John M. Gesmonde* and *Nancy E. Valentino*, for the plaintiff.

*Kerry Anne Colson*, assistant attorney general, and *William Tong*, attorney general, for the defendant.

*Opinion*

CORDANI, J.

## INTRODUCTION

The plaintiff, Maria Moulthrop (plaintiff), appeals from a final decision by the defendant, the Connecticut State Board of Education (board), revoking her initial educator and professional educator certificates. This appeal is taken pursuant to General Statutes § 4-183. The board issued a complaint seeking revocation of the plaintiff's certifications as provided for in General Statutes § 10-145b. A hearing officer held a hearing over the course of nine days from 2016 through 2018. The hearing officer issued his proposed decision on October 9, 2018, recommending that the plaintiff's professional educator's certificate be revoked and that her initial educator's certificate be put on probation with specified conditions. The board issued its final decision on February 6, 2019, adopting the proposed decision of the hearing officer as the board's final decision, with only one change—revoking both of the plaintiff's certifications. The plaintiff has appealed the board's final decision to this court.

## FACTS

The plaintiff was the principal of Hopeville Elementary School in Waterbury (Hopeville) from 1996 until she resigned in December, 2011. The issues in this matter revolve around the administration of the Connecticut Mastery Test (CMT) in the spring of 2011 at Hopeville. The plaintiff was the principal of Hopeville during the administration of the 2011 CMT. The CMT is a statutorily mandated, statewide, standardized test used for the purpose of measuring achievement in reading, language arts, and mathematics. Hopeville students' performance on the CMT prior to 2011 could best be characterized as struggling, with fluctuating failing and nonfailing results. The spring 2011 CMT scores for Hopeville, however, were higher than those of any other public school in Waterbury, higher than the statewide averages for all students, and substantially higher than Hopeville's previous year's scores. This unusual change in Hopeville's CMT scores prompted an investigation. That investigation determined that cheating occurred in the administration of the spring 2011 CMT at Hopeville.

There is no dispute that cheating did indeed occur with respect to the spring 2011 CMT at Hopeville. Even the plaintiff admits that cheating appears to have occurred; she does, however, dispute her involvement in and responsibility for the cheating. The investigation relied on various evidence to conclude that cheating occurred. First, the CMT was readministered at Hopeville in September, 2011, and the results were much lower than the spring 2011 results. On the basis of an analysis of the results data, Stephen Martin determined, and testified as an expert, that the spring 2011 CMT

results at Hopeville were the result of adult interference with the test on a schoolwide scale. Second, a company called Measurement Incorporated conducted an erasure analysis to determine statistical anomalies in the erasure data for the spring 2011 CMT at Hopeville. The average number of erasures and the number of answers changed from "wrong" to "right" at Hopeville significantly exceeded the statewide results. Gilbert Andrada, a psychometrician, testified as an expert on this issue. Dr. Andrada testified that the difference between the erasures at Hopeville and the statewide results was highly unlikely to have occurred naturally. Even the plaintiff's expert testified that the answer changes at Hopeville did not occur naturally but were the product of cheating by adults. Finally, Frederick L. Dorsey, an attorney, conducted an investigation at Hopeville, primarily interviewing teachers and students as well as collecting evidence, which produced direct evidence of cheating on a schoolwide scale. Thus, the evidence that cheating occurred on a schoolwide scale at Hopeville in the administration of the spring 2011 CMT is overwhelming, and the plaintiff does not challenge the determination that cheating occurred.

The plaintiff's challenge in this appeal is directed at the board's determination that she was involved in, and responsible for, the cheating that occurred. The hearing officer made 179 specific findings of fact. The hearing officer found that the plaintiff was personally involved in and responsible for the cheating based in part on, inter alia, the following findings of fact:

1. As principal, the plaintiff was responsible for the overall operation of Hopeville,[1] including having the ultimate responsibility for the administration of the CMT in the spring of 2011. The plaintiff was a hands-on principal who was directly involved in most of what went on at Hopeville.

2. The Waterbury school district had assigned the ultimate responsibility for the proper administration of the CMT to the principal in each school.[2]

3. During the administration of the CMT, the test booklets were stored in the plaintiff's locked office.

4. The plaintiff was trained in the proper administration of the CMT.[3]

5. Margaret Perugini, a Hopeville teacher and friend of the plaintiff, had the office next door to the plaintiff and had access to the plaintiff's office.

6. At a meeting at which the plaintiff was present, Mrs. Perugini passed out a list of questions derived from the 2011 CMT and requested that teachers review them with their classes.[4]

7. At a meeting at which the plaintiff was present, Mrs. Perugini distributed a list of vocabulary words that were derived from the 2011 CMT test and requested

that teachers review them with their classes.[5]

8. The plaintiff instructed teachers to assist students by changing words used on the CMT to synonyms that the students could more easily understand.[6]

9. The plaintiff instructed teachers to review the test in advance and to advise students to "check your work" while pointing to specific answers that the teachers knew were incorrect.[7] The students understood this to be an instruction to change an incorrect answer.

10. There was evidence that the improper changing of answers from incorrect to correct by adults occurred while the test booklets were stored in the plaintiff's office.

The findings of fact include direct evidence of the plaintiff's direct involvement in the cheating, indirect and circumstantial evidence of the plaintiff's direct involvement in the cheating, from which the hearing officer drew inferences, and direct evidence that the plaintiff was generally responsible for the cheating as a result of her position as principal, her responsibility for test security, and her failure to maintain proper test security.

The CMT is a standardized mastery test that is federally mandated and serves several purposes. First, the CMT measures the proficiency of students' understanding and skills in the areas tested. Second, it provides data to the school district to assist in refining areas of teaching in general and in focusing on areas of need for particular students and/or schools. Third, it provides data such that schools and school districts may be evaluated and compared in decisions of resource allocation. Last, it provides some measurement of the effectiveness of teaching. All of the foregoing goals can be undermined if the results are artificially skewed by cheating.

The plaintiff is classically aggrieved by the board's final decision because the board's final decision strips the plaintiff of her certifications as a teacher and as a school administrator.

### STANDARD OF REVIEW

This appeal is brought pursuant to § 4-183 of the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq.[8] Judicial review of an administrative decision in an appeal under the UAPA is limited. See, e.g., *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 343, 757 A.2d 561 (2000). "[R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither [our Supreme Court] nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or

questions of fact. . . . [The court's] ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) Id.

Although the courts ordinarily afford "deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes . . . [c]ases that present pure questions of law . . . invoke a broader standard of review than is . . . involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) *Dept. of Public Safety* v. *Freedom of Information Commission*, 298 Conn. 703, 716, 6 A.3d 763 (2010).

## ANALYSIS

The plaintiff challenges the board's final decision on several grounds, both factually and procedurally.[9] The plaintiff also challenges the validity and enforceability of the applicable statute. As this court will soon discuss further, this court finds that the plaintiff has not established that the board's decision was defective in view of the standard of review on appeal.

### A

### Record Contains Substantial Evidence to Conclude Both That Plaintiff Was Directly Involved In Cheating and Was Responsible For Cheating Schoolwide

The record contains substantial evidence that the plaintiff was directly involved in the cheating. First, the record contains evidence, and the hearing officer found, that the plaintiff personally instructed Hopeville teachers to review the test in advance and to move around the classroom, observe students' answers to various questions, and specifically instruct students to "check your work" in relation to particular questions that teachers observed particular students had answered incorrectly. Students indicated that they understood the "check your work" prompt to be a signal that a particular answer they had was incorrect and that they should go back and correct it. Second, the plaintiff was present at meetings where Mrs. Perugini distributed questions and vocabulary words that were taken from the 2011 CMT[10] and instructed teachers to review them with their classes. Last, the record contains evidence that the plaintiff instructed teachers to provide the students with synonyms for words on the CMT that they might not readily understand. In each of the foregoing three cases, the plaintiff directly participated in, and even instructed, the cheating. As is readily apparent, each of the foregoing issues amounted to an improper breach of security of the CMT. Further, the record contains substantial evidence that the plaintiff understood, as

would any reasonable person, that the foregoing activities would be cheating and would amount to a breach of the security of the test.

The record contains substantial indirect and circumstantial evidence that the plaintiff knew of, allowed, and likely encouraged a group of teachers to erase and change answers from incorrect to correct. First, it is undisputed that adults erased answers in the students' test booklets and changed answers from incorrect to correct. While the tests were not actively in use, they were locked up in the plaintiff's office, which was secure except for a door from Mrs. Perugini's office. The record contains evidence indicating that teachers observed the test booklets spread out in the plaintiff's office on a table and chair on at least two occasions and were suspicious about why they were spread out in that fashion instead of boxed up. The hearing officer found that the evidence that adults actively changed the answers on the tests was overwhelming. The hearing officer found it improbable that all of the breaches of security that were found to have occurred could have been carried out without the plaintiff's knowledge and participation. Further, the hearing officer specifically found that the plaintiff's testimony and explanation for the breaches were not credible. Because it is undisputed that answers were inappropriately changed, because the plaintiff had control of the test booklets when not in use, because of evidence suggesting that operations on the test booklets were occurring in the plaintiff's office, and because the hearing officer specifically found that the plaintiff's explanation was not credible, it was not unreasonable for the hearing officer to conclude that the plaintiff was at least aware that answers were being inappropriately changed.[11]

Last, the plaintiff was the principal of the school. As such, she was in charge of the overall operations of the school, including the administration of tests therein. The hearing officer found that the plaintiff was a hands-on principal and was involved in most of what went on at Hopeville. Further, the record contains substantial evidence that the school district had specifically designated the principal in each school as being ultimately responsible for the administration of the CMT. Given the foregoing, it was not unreasonable for the hearing officer to conclude that the plaintiff failed to maintain appropriate security and was responsible for the CMT security breaches that occurred.

Accordingly, the record contains substantial evidence, direct and circumstantial, that the plaintiff directly participated in a portion of the cheating. The record also contains substantial evidence, direct and circumstantial, that the plaintiff knew the cheating was going on and did not stop it. Last, the record contains substantial evidence, direct and circumstantial, that the plaintiff, as principal, had responsibility for the cheat-

ing.

Attorney Dorsey's Report and Associated Interview
Transcripts Were Properly Admitted into Evidence
And Plaintiff Was Not Denied Opportunity
To Cross-Examine Witnesses

The board retained Attorney Dorsey to conduct an investigation into the situation. Attorney Dorsey visited Hopeville, interviewed teachers and students, and collected evidence. His interviews were recorded and the recordings were transcribed. Attorney Dorsey wrote a report that summarized his findings. The board introduced Attorney Dorsey's report as evidence at the hearing through the testimony of Attorney Dorsey, who was examined and cross-examined at the hearing.

The plaintiff asserts that it was erroneous to admit the report. Administrative hearings, such as this hearing before the board, are not governed by strict application of the rules of evidence, such as the hearsay rule. See, e.g., *South Windsor* v. *South Windsor Police Union Local 1480, Council 15, AFSCME, AFL-CIO*, 57 Conn. App. 490, 505, 750 A.2d 465 (2000), rev'd on other grounds, 255 Conn. 800, 770 A.2d 14 (2001). In administrative hearings, hearsay evidence may be admitted if it is reasonably found to be reliable and trustworthy. See *Cassella* v. *Civil Service Commission*, 4 Conn. App. 359, 362, 494 A.2d 909 (1985), aff'd, 202 Conn. 28, 519 A.2d 67 (1987); see also *Bialowas* v. *Commissioner of Motor Vehicles*, 44 Conn. App. 702, 712, 692 A.2d 834 (1997). In the present case, a neutral investigator hired by the board prepared the report. The investigator testified at the hearing and was cross-examined. The investigator's interviews with students and teachers were recorded and later transcribed. The plaintiff was provided with the transcriptions and had access to the recordings. Further, the plaintiff was free to subpoena any witness interviewed or referenced in the report. Although the plaintiff objected to the entry of the report into evidence, the plaintiff did not properly preserve an objection to Attorney Dorsey's testimony at the hearing. The plaintiff further affirmatively introduced the transcripts of Attorney Dorsey's interviews into evidence as the plaintiff's evidentiary exhibits. In view of the foregoing, the court finds that the report had sufficient indicia of reliability and trustworthiness, and its introduction into evidence in the administrative hearing was not error.

In a related objection, the plaintiff asserts that the introduction of the report into evidence deprived the plaintiff of the ability to cross-examine witnesses referenced in the report. The court finds that this objection is misplaced. This administrative proceeding was not a criminal proceeding, and, as such, the constitutional right to confront and cross-examine witnesses does

not apply. What does apply is the requirement that the hearing be fair and that appropriate due process be afforded the plaintiff.[12] As noted previously, the hearsay nature of the report did not make it error to admit the report into evidence. The interviews conducted by the investigator were recorded and later transcribed. The transcripts were provided to the plaintiff, and the plaintiff had access to the recordings. The plaintiff was free to independently interview any witness referenced in the report. The plaintiff also had the ability to subpoena any witness referenced in the report to testify at the hearing. Further, the plaintiff herself moved interview transcripts into evidence. Accordingly, to the extent that the plaintiff wished to examine any of the witnesses referenced in the report, or other witnesses, process was available to the plaintiff to compel such testimony. The plaintiff did not take advantage of such process available to her. As such, the plaintiff's after-the-fact complaint that she was not able to cross-examine witnesses is unavailing.

Thus, the court finds that admission of the Dorsey report into evidence was not error, and, further, that the plaintiff has not properly preserved her objection to the admission of the report and related testimony. The court also finds that the process provided to the plaintiff was sufficient for the conduct of a fair administrative hearing and that the plaintiff could have resolved her desire to cross-examine witnesses that were not called by the board by issuing subpoenas for such witnesses to testify at the hearing. The plaintiff's failure to do so precludes her ability to complain about a lack of ability to examine such witnesses at the hearing.

C

Section 10-145b (i) (2) is Not
Invalid or Unenforceable

The plaintiff challenges the validity and enforceability of § 10-145b (i) (2). This particular statute authorizes the board to revoke certifications previously issued by it under circumstances specified in the statute. Section 10-145b (i) (2) provides in relevant part: "The State Board of Education may take any of the actions described in subparagraphs (A) to (C), inclusive, of subdivision (1) of this subsection with respect to a holder's certificate, permit or authorization issued pursuant to sections 10-144o to 10-149, inclusive, for any of the following reasons . . . (C) the holder is professionally unfit to perform the duties for which the certificate, permit or authorization was granted . . . or (E) *other due and sufficient cause*. The State Board of Education may revoke any certificate, permit or authorization issued pursuant to said sections if the holder is found to have intentionally disclosed specific questions or answers to students or *otherwise improperly breached the security of any administration of a mastery examination*, pursuant to section 10-14n. . . ."

(Emphasis added.)

The plaintiff challenges the foregoing statute on several fronts. First, the plaintiff asserts that the statute is penal in nature and must be strictly construed. Second, the plaintiff claims that references in the statute to "other due and sufficient cause" and "otherwise improperly breached the security" are vague, such that the statute is either invalid or not appropriately applied to the plaintiff. Third, the plaintiff asserts that her conduct did not meet the conditions of the statute. Last, the plaintiff contends that the statute is invalid because it does not give necessary guidance to the board as to how to arrive at an appropriate remedy for a violation.

Legislative enactments carry with them a presumption of validity and enforceability. "[A] party challenging the constitutionality of a validly enacted statute bears the heavy burden of proving the statute unconstitutional . . . ." (Internal quotation marks omitted.) *State* v. *Wilchinski*, 242 Conn. 211, 217–18, 700 A.2d 1 (1997). If the meaning of a statute can be fairly ascertained, the statute is not void for vagueness. To consider the plaintiff's claim of vagueness, first, the nature of the statute must be ascertained.

The statute is clearly not a penal statute. No imprisonment, fine, or other penal punishment is authorized. Instead, the statute authorizes the board to properly administer the certificates, permits, and authorizations issued by it. Sections of the statute that precede § 10-145b (i) (2) provide the board with authorization to issue such certificates, permits, and authorizations under appropriate conditions. In rounding out the board's authority then, § 10-145b (i) (2) authorizes the board to suspend, place on probation, or revoke such certificates, permits, and authorizations that it had previously granted. Thus, the statute unsurprisingly allows the board to administer the certificates, permits, and authorizations that it issues. The purpose of the statute is to ensure that only worthy persons have and maintain certifications to teach students in the state's public schools. The statute is clearly a civil statute, not penal in nature, directed to administering certifications issued by the board. As such, the canon of strict construction does not apply.

The reference to "(E) other due and sufficient cause" does not render the statute impermissibly vague. The statute specifies reasons (A) through (E), with (A) through (D) being specific and (E) being more general. The use of the word "other" in "other due and sufficient cause" refers back to (A) through (D) and, thus, requires (E) to be a reason of the type and importance of (A) through (D). Therefore, with the foregoing in mind, "(E) other due and sufficient cause" means a reason, of the type and importance of (A) through (D), judged by the board in good faith and rationality to satisfy the statute. This provision is not impermissibly vague. See *Hanes*

v. *Board of Education*, 65 Conn. App. 224, 232, 783 A.2d 1 (2001); see also *diLeo* v. *Greenfield*, 541 F.2d 949, 954 (2d Cir. 1976); *Tucker* v. *Board of Education*, 177 Conn. 572, 578, 418 A.2d 933 (1979).

The reference to "otherwise improperly breached the security of any administration of a mastery examination"[13] also does not render the statute impermissibly vague. The phrase preceding this gives an example of improperly breaching security. The word, "otherwise," indicates that actions, other than intentionally disclosing specific questions or answers to students, taken to improperly breach the security of the test can satisfy the statutory requirement. The statutory reference is clearly to the CMT, the Connecticut Mastery Test. The "security of any administration" of the test noted therein refers to the propriety of the means by which the test is handled and processed by the teachers and administrators who administer the test. Security, as with any test, includes maintaining the confidentiality of the test and not affirmatively taking steps to undermine the fair and accurate results of the test. "Improperly" means inappropriate action that exceeds mere negligence. Improperly requires some level of fault beyond honest mistake. Thus, the statute has a reasonably ascertainable meaning, and is, therefore, not impermissibly vague.

The plaintiff's conduct meets the requirements of the statute. In its final decision, the board found as follows: "[T]he conduct of [the plaintiff], as found in the proposed decision, is serious and warrants the imposition of such revocation. This conduct constitutes a breach of faith with her students, their parents, her teachers and the [s]tate that renders her unfit to teach." Thus, the board specifically found that the conduct determined by the hearing officer in the proposed decision was such as to convince the board that the plaintiff was professionally unfit to perform the duties of a teacher, as specified in § 10-145b (i) (2) (C). There is substantial evidence in the record to support this determination, and the determination was not unreasonable, given the record. The hearing officer focused more on the "other due and sufficient cause"[14] and "otherwise improperly breached the security of any administration of a mastery examination" aspects of the statute. The record also contains substantial evidence that the plaintiff's conduct satisfied the foregoing prongs of the statute as well. In analyzing any of the three relevant portions of the statute, the plaintiff's conduct, as found by the hearing officer, would be sufficient to revoke her certificates.

Once again, the record contains substantial evidence that the plaintiff was directly involved in fostering cheating on the CMT. First, the record contains evidence, and the hearing officer found, that the plaintiff personally instructed Hopeville teachers to review the

test in advance and to move around the classroom, observe students' answers to various questions, and specifically instruct students to "check your work" in relation to particular questions that teachers observed particular students had answered incorrectly. Students indicated that they understood the "check your work" prompt to be a signal that a particular answer they had was incorrect and that they should go back and correct it. Second, the plaintiff was present at meetings where Mrs. Perugini distributed questions and vocabulary words that were taken from the 2011 CMT and instructed teachers to review them with their classes. Last, the record contains evidence that the plaintiff instructed teachers to provide the students with synonyms for words on the CMT that they might not readily understand. In each of the foregoing three cases, the plaintiff directly participated in, and even instructed, the cheating. Each of the foregoing issues amounted to an improper breach of security of the CMT—the purposeful failure to maintain the confidentiality of the test and purposeful action to undermine the fair and accurate results of the test. Further, the record contains substantial evidence that the plaintiff understood, as would any reasonable person, that the foregoing activities would be cheating and would amount to a breach of the security of the test. Given the fostering of this cheating, on a schoolwide basis, by a principal, the evidence clearly also meets the "other due and sufficient cause" requirement of the statute because the commission of cheating by a principal clearly undermines the fitness of the plaintiff to teach and to be an appropriate example for the students and teachers under her purview.

The plaintiff takes the board to task for the hearing officer's reference to the Code of Professional Responsibility for School Administrators and the Code of Professional Responsibility for Teachers. Neither of these codes are necessary for the decision that was made in this matter. Both of the codes, however, are appropriate and useful in gauging whether a person is fit to act as a teacher or an administrator, and in determining "other due and sufficient cause." It must be noted that teachers and school administrators are professionals licensed by the state through the board to practice their professions. These codes establish a norm or expectation for the conduct of teachers and school administrators. As such, they are an appropriate yardstick or guide in judging the plaintiff's fitness to practice and maintain her licensure.

As for the penalty, the board determined that the plaintiff was unfit to teach and, thus, revoked the plaintiff's certificates. This determination was not unreasonable. The conduct of the plaintiff, as found by the hearing officer, caused the Waterbury school district to have to expend serious resources in investigating this situation, disregarding the initial results of the test, and

readministering the test. This also unnecessarily used time that could have been devoted to teaching. The conduct caused both the board and the Waterbury school district to lose faith in the plaintiff. Most importantly, the plaintiff set a poor example for her students and teachers. The most vital thing, and the very minimum, that we expect from teachers and school administrators is to set a good example for their students. Given the facilitation of schoolwide cheating, the plaintiff's conduct constituted "a breach of faith with her students, their parents, her teachers and the [s]tate that renders her unfit to teach," as found by the board.[15] The board's decision to revoke the plaintiff's certificates was not unreasonable. The statute, as is not untypical, authorizes remedies up to and including revocation of certificates. The choice on the spectrum is left to the good faith discretion of the board. This does not render the statute impermissibly vague, either generally or as applied to the plaintiff.

## CONCLUSION

The plaintiff has appealed in her complaint for each of the statutory reasons specified in § 4-183 (j). This court determines that the plaintiff has failed to establish on appeal that the board's decision was (1) in violation of constitutional or statutory provisions, (2) in excess of the statutory authority of the agency, (3) made upon unlawful procedure, (4) affected by other error of law, (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record, or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. As such, the court dismisses the appeal.

## ORDER

The appeal is dismissed.

* Affirmed. *Moulthrop* v. *Connecticut State Board of Education*, 205 Conn. App.    ,    A.3d    (2021).

[1] See testimony of plaintiff, administrative hearing transcript, dated January 16, 2018, pp. 84–89 (record, vol. IV, item 12).

[2] See board's exhibit 34, letter, dated April 10, 2012, from Tara Battistoni to Steve Martin (record, vol. V, item 34, p. 1069) (describing the policy of the Waterbury school district on this point); see also testimony of Battistoni, administrative hearing transcript, dated November 4, 2016, pp. 605–606 (record, vol. IV, item 6); testimony of Dr. Ronald K. Hambleton, the plaintiff's expert, administrative hearing transcript, dated December 1, 2016 (record, vol. IV, item 10).

[3] Prior to the administration of the CMT, the plaintiff attended training sessions for the administration of the CMT. The training included a review of test security, including the relevant instructions in the Test Coordinator's Manual and Examiner's Manual. The foregoing manuals contain specific instructions concerning test security and validity. The manuals specify that breaches in test security include copying of test materials, failing to return test materials, coaching students, giving students answers, and/or changing students' answers.

[4] See respondent's exhibit PP, Attorney Dorsey's interview transcripts of Cara Munro, Mark Esposito, Yenny Villar and Amanda Koestner (record, vol. VI, item PP), and board's exhibit 23, Attorney Dorsey's investigative report (record, vol. V, item 23); see also board's exhibits 15 and 19 (record, vol. V, items 15, 19); testimony of Stephen Martin, administrative hearing transcript, dated October 25, 2016, pp. 180–81 (record, vol. IV, item 3); testimony of Deirdre Ducharme, administrative hearing transcript, dated

October 27, 2016, pp. 389–94 (record, vol. IV, item 4). It should be noted that, at the time that these questions and vocabulary words, which were derived from the 2011 CMT, were distributed, the 2011 CMT tests were secured in the plaintiff's office.

[5] See footnote 4 of this opinion.

[6] See respondent's exhibit PP, Attorney Dorsey's interview transcripts of Amanda Koestner and Stacey Tomasko (record, vol. VI, item PP); see also board's exhibit 23, Attorney Dorsey's investigative report (record, vol. V, item 23).

[7] See respondent's exhibit PP, Attorney Dorsey's interview transcripts of Cara Munro, Stacey Tomasko, Mark Esposito and Kelley Brooks (record, vol. VI, item PP); see also board's exhibit 23, Attorney Dorsey's investigative report (record, vol. V, item 23, p. 962) (on the two students he interviewed).

[8] General Statutes § 4-183 (j) provides in relevant part: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings. . . ."

[9] To the extent that the plaintiff, in her reply brief, attempts to incorporate by reference briefs and other filings which were not filed with this court, the court has not considered such attempted incorporations by reference. The plaintiff's attempt to incorporate by reference briefs and documents not filed with this court is an inappropriate attempt to circumvent the briefing page limits set and to confuse the issues presented to this court for review. The briefs filed with this court must, in accordance with the applicable rules, contain and brief the issues sought to be reviewed by this court. Attempts to circumvent the rules by incorporating arguments by reference is inappropriate and is rejected.

[10] As is readily apparent, undermining the confidentiality of the test, as with any test of this type, undermines the accuracy and comparability of the results, and produces results that are not fairly indicative of the proficiency of the students being tested. Further, at the time that these questions and vocabulary words, which were derived from the 2011 CMT, were distributed, the 2011 CMT tests were secured in the plaintiff's office.

[11] The hearing officer, as the finder of fact, had the ability and responsibility to draw reasonable inferences from the evidence, both direct evidence and circumstantial evidence.

[12] The complaint initiating this process was detailed and provided the plaintiff with specific notice of the issues to be adjudicated. The plaintiff answered the complaint without further pleadings requesting revisions to or clarifications of the allegations of the complaint. Further, Attorney Dorsey's report was also detailed and thorough in describing the issues and the expected evidence.

[13] The court finds that the word "intentionally" that appears prior to this phrase in the sentence does not modify this phrase. Thus, this phrase in the statute is satisfied if the security of the administration of a mastery examination is improperly breached.

[14] Certainly, if the plaintiff has taken actions that cause her to be unfit to teach, due and sufficient cause exists.

[15] This finding also satisfies the "other due and sufficient cause" specified in the statute. As noted, the record evidence also supports the finding that the plaintiff improperly breached the security of the 2011 CMT.